[Civ. No. 2716. Fourth Dist.—May 15, 1941.]

LAVINIA STANSELL, a Minor, etc., et al., Respondents, v. SAFEWAY STORES, INC. (a Corporation), Appellant.

Arthur F. H. Wright for Appellant.

Harden, Hervey & Holt for Respondents.

BARNARD, P. J.—This is an action for damages on account of injuries suffered by the plaintiff minor as a result of an assault made upon her by an agent of the defendant, who was the manager of one of its branch grocery stores in San Diego. A judgment totaling $516 was rendered in favor of the plaintiffs and the defendant has appealed on the sole ground that the court's finding to the effect that this manager at the time of the assault was acting within the scope of his

employment is not sustained by the evidence, it being contended that the evidence clearly discloses that at the time in question he had departed from the course and scope of his employment.

The facts are undisputed. On February 9, 1939, the respondent minor, who was then 14 years of age, at the request of her mother, went to this store to obtain certain groceries upon a county relief order, which order she had been told by her mother was at that store. She collected the groceries and took them to the checking counter where she was told by another employee of the store that he was unable to find the relief order. The manager assisted in looking for the order, but was also unable to find it. Thereafter, the manager talked to the girl's mother over the telephone and told her the order was not there. The mother insisted it was there and asked him to look again. He replied that the order was not there, that he was not going to look any more, that he was the manager of the store and that he should know what was there. He became angry during the telephone conversation and immediately thereafter, the closing hour for the store having come, he accompanied the girl to the door in order to let her out. At the door, the girl said to him "Well, are you-all trying to gyp us out of some groceries?" The manager replied: "No, and that damned bitch on the other end of the line is lying". The girl replied: "If my mother is a damned bitch you are a bastard". The manager immediately started for the girl and she ran. He caught her within 60 or 70 feet and struck her and kicked her, knocking her to the ground and causing the injuries here involved.

It is well settled that a master is liable for the wrongful acts of his servant committed while in his service and within the scope of his employment. Conversely, it is equally well settled that the master is not liable for acts committed by a servant who has departed from the service of his master and is engaged in carrying out an independent purpose of his own. (*Stephenson* v. *Southern Pac. Co.*, 93 Cal. 558 [29 Pac. 234, 27 Am. St. Rep. 223, 15 L. R. A. 475].) In *Rahmel* v. *Lehndorff*, 142 Cal. 681 [76 Pac. 659, 100 Am. St. Rep. 154, 65 L. R. A. 88], where a guest of a hotel was assaulted by a dining room waiter, a judgment for the plaintiff was reversed largely on the theory that the defendant was not

liable because he had not authorized his servant to assault his guests. This theory was criticised in *Ruppe* v. *City of Los Angeles,* 186 Cal. 400 [199 Pac. 496], in which case it was held that it was immaterial whether or not the wrongful act had been authorized by the employer. While the court reiterated the rule that a master is not liable where his servant steps aside from his employment to do a wilful wrong, it pointed out that such liability still exists, even where the servant's act is malicious or wilful, if the act is one which is done in furtherance of the purpose of the employment.

The court there said:

"It is, however, wholly immaterial whether or not the assault was authorized by the city, or was committed by Nealon in violation of his instructions. It is plain enough that it was committed by him in the course of doing that which he had been sent to the building by the city to do and in furtherance of its doing; that it was, in other words, an act done by him in the course of his employment."

There is marked distinction between a departure from the line or scope of a servant's employment and his departure from, or neglect of, his duty while carrying on his employment. In *Riordan* v. *Gas Consumers' Assn.,* 4 Cal. App. 639 [88 Pac. 809], the court said:

"The question, generally, is whether the servant at the very time of the alleged act of negligence, had departed from his employment, or whether he departed from or neglected a duty in the line of his employment. In the first case the principal is not responsible for the servant's acts, and in the second case he is responsible."

This distinction has been recognized in the more recent cases, a number of which are discussed in *Hiroshima* v. *Pacific Gas & Elec. Co.,* 18 Cal. App. (2d) 24 [63 Pac. (2d) 340]. In that case, which is factually quite similar to the one now before us, the court said:

"It is not necessary that the assault should have been made 'as a means, or for the purpose of performing the work he was employed to do'. The authorities hold that if the assault takes place in the course of the agent's employment, the principal is liable. The language of the code which we have just set forth reads: 'Wrongful acts committed by such agent in and as a part of the transaction of such business,' not, as appellant would have us hold, for the purpose of transact-

ing the business. This fact being kept in mind, the cases cited by the appellant are readily distinguishable from the facts involved, from what we have here to consider.''

The court also quoted from 18 Ruling Case Law, page 797, as follows:

'' 'Responsibility is not limited to those acts which promote the objects of the employment. . . . The general idea is that the employee at the time of doing the wrongful act, in order to fix liability on the employer, must have been acting in behalf of the latter and not on his own account. But every departure by the servant from the strict course of his duty, even for a purpose of his own, will not in and of itself be such a departure from his master's business as will relieve the master of liability for the acts of the servant. The servant may at the same time be combining both his own and his master's business, and in such case the master will be liable for his acts.' ''

In connection with the discussion of another case the court then said:

''The opinion in this case shows careful consideration, and shows clearly that the master is liable even though the act of the agent is wilful, so long as it is committed in the course of his employment, not that the agent was employed to perform the specific act, but that the agent was in the performance of the duties which he was otherwise ordered and empowered to perform. In the case at bar Downs was unquestionably engaged in the work of his principal, for which he was employed and directed to perform, and brings the act of the assault upon the plaintiff as being performed within the meaning of the term 'scope of employment'.''

 Applying these rules to the facts now before us it must be held that the evidence sustains the finding that the wrongful acts here in question were committed while the appellant's manager was acting within the scope of his employment. He first lost his temper while he was handling the matter of the order, which was clearly in the line of his duty. He became more angry in answering a question asked by the girl with respect to the groceries, and in replying to that question accused her mother of lying and called the mother a vile name. The girl's answering epithet increased his anger but did not change the nature of the quarrel which arose in, from and as a part of his performance of the duty

for which he was employed. He was on duty at all times, the girl was dealing with him for this reason, the matter was still being discussed and had not been completed when the final phase started, the entire controversy was closely connected with his work, and the matter was continuous and of brief duration. Rather than disclosing a departure from the line and scope of his employment the evidence indicates that his wrongful acts resulted, at least in part, from his mistaken and excessive zeal in performing his duty as manager of the store. Any personal element, involving his reaction to the girl's epithet, was incidental and additional to his obvious purpose to protect the interest of the store, to complete the transaction, and to get rid of the girl. His unwarranted action not only immediately grew out of the manner in which he was performing his duty to his employer, but was in a very real sense a part thereof and not a departure therefrom. The matter being one which was a question of fact for the trial court it cannot be said that the court's finding that the acts were committed in the course and within the scope of his employment is not sustained by the evidence.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.