[Civ. No. 20704.   Second Dist., Div. Two.   June 24, 1955.]

JOSEPH CALDWELL, Respondent, v. EUGENE FARLEY et al., Defendants; HOD CARRIERS AND LABORERS LOCAL 802 (an Unincorporated Association), Appellant.

Alexander H. Schullman, Boris Raynes and Abe Mutchnik for Appellant.

Plotkin & Cossman for Respondent.

MOORE, P. J.—The sole question for decision is whether there is sufficient substantial proof to support the finding that the tortious act of a labor union's agent was committed within the scope of his employment. Respondent sued appellant and its job steward Farley for damages on account of Farley's striking respondent with a club on the head without justifiable cause. Judgment was entered on the court's findings. The union appeals.

On May 14, 1952, one Eugene Farley was the steward of appellant, an unincorporated association. Respondent was, at the same time and place, a member of the plasterer's union and was present for the purpose of plying his trade on the same structure on which the members of appellant were at work. At lunch time of the day preceding, respondent ex-

pressed his opinion upon the inadvisability of a strike by appellant. The substance of such expressions was communicated by McDaniel of appellant union to defendant Farley about 7:15 a. m. of May 14. On receipt of such intelligence, Farley located respondent and engaged him in a discussion concerning the reaction of respondent's reported remarks upon the members of appellant. Bitter words were exchanged. Farley said he wished respondent would be quiet and peaceful; "you are causing friction and agitating and needling union members and they have reported it to me . . . You keep your damned mouth shut or you will get your head busted in." As respondent turned and started to walk away, Farley struck his head with a 1″ x 4″ board, causing serious bodily injuries.

Appellant contends that (1) Farley, as steward, was restricted to such duties as were prescribed in "Wage Scales and Working Rules of the Southern California District Council of Laborers"; (2) the assault upon respondent occurred "before work began"; (3) the discussion preceding the battery in no way concerned labor disputes or grievances, but concerned respondent's personal dislike for hod-carriers; (4) the discussion terminated amicably; (5) Farley was angered by remarks directed against him by respondent, and reacted impulsively in committing the battery; (6) appellant at no time authorized Farley to conduct any of his expressly defined duties by the exercise of force and violence; (7) no evidence warranted a conclusion of liability under the rule of *respondeat superior*. Such contentions may be briefly summarized with one sentence: Farley's assault was outside the scope of his authority.

That the battery upon respondent was within the scope of the steward's agency will readily appear. Scope is defined as range or extent of view; intent, or sweep. (*Webster's International* Dictionary.) ■ An employer is liable for the ployment. ■ His responsibility extends beyond his actual malicious tort of his employee done in the scope of his employment. control over the conduct of his employee. He is liable for the wrongful acts of his agent where such acts are a part of the business which the agent was employed to do. (*Carr* v. *Wm. C. Crowell Co.*, 28 Cal.2d 652, 654 [171 P.2d 5].) In that case the employee of the company threw a hammer at another workman and injured him. Defendant's enterprise required the association of employees with third parties, attended by the risk that someone might be injured. ■ "The risk of

such association and conditions were risks of the employment." In *Stansell* v. *Safeway Stores, Inc.*, 44 Cal.App.2d 822, 824 [113 P.2d 264], the manager of the grocery was acting within the scope of his employment when he struck a customer after 'they had quarreled over an order and exchanged vile epithets.

Where the driver of an oil company's truck disputed with a motorist after the latter's car had been run off the highway by the truck and concluded his argument by striking the motorist with a "large instrument," the trial court properly instructed the jury that the assault by the truck driver was the conduct of the oil company. The court held that "the fact that the questioned act was unauthorized or, if wrongful, that it was not committed in order to further the interests of the principal, will not show such a departure from the service of the principal as will absolve the latter if the act was committed while the agent was still occupying himself with the principal's business within the scope of his employment. . . . Sanders' entire association with plaintiff arose out of his use of the public highway on his employer's business." (*Fields* v. *Sanders*, 29 Cal.2d 834, 839, 840 [180 P.2d 684, 172 A.L.R. 525].)

The finding herein was that the battery was not only committed within the scope of the employment, but also, that the moment of its occurrence was within its course even though the time for beginning the day's work had not arrived. The hearing of disputes and grievances was opportune whenever the union's members were assembled at the situs of construction and the steward was present. It is unreasonable to conceive that a steward whose duties required him to report grievances should remain silent and refuse to inquire in order to ascertain the origin or quality of grievances or disputes until the men have commenced the daily task for which they are employed. If Farley was the person to whom complaints should be made, Mr. McDaniel was in order in narrating grievances at 7 a. m. instead of waiting until 8 o'clock. Also, if it was Farley's duty to quiet agitators, 7:30 a. m. was a wholesome hour to proceed with such duty. Farley's discussion with McDaniel and his reproval of respondent were both concerned with appellant's business. The propriety of his admonition to respondent was as correct as if he had waited until the noon hour or the close of the day. Farley's first words to respondent were that the union had reacted unfavorably to the report of respondent's agitating its members.

His last words were his threat which was followed by "busting" respondent's head.

If Farley's words and act were not within the scope of his employment, it is not conceivable in what scope they were. The men were holding neither a formal party nor a picnic. The workers were congregating to enter upon their duties. Farley's words concerned only the affairs of his union and the grievances of its members toward respondent. While the evidence was such that an inference might have been drawn that the blow was dealt at a time after the reprimand to respondent and was the result of respondent's work, yet the court found that "Farley, with the desire to hurt and injure the plaintiff, did assault and strike the plaintiff on and about the head and shoulder with a board . . . it is not true that the aforesaid acts of Eugene Farley were committed in his own defense . . . at the time said blow was struck, defendant Eugene Farley was the agent of . . . Local 802 and was acting within the scope of said agency."

The contention is made that the battery was motivated by personal anger and did not advance the interests of the union and was therefore outside the scope of his employment and fixed no liability on appellant. ■ Liability followed if the injury resulted from a dispute arising out of Farley's pursuit of his duty. ■ It is not indispensable to a liability that the assault should have been made for the purpose of performing the work the employee was employed to do. (Civ. Code, § 2338; *Hiroshima* v. *Pacific Gas & Elec. Co.*, 18 Cal. App.2d 24, 28 [63 P.2d 340].) ■ From the words used and threat made by Farley in his reprimand of respondent, it was a fair deduction that the clubbing administered by the steward was to terrorize all workers of other unions and to dissuade them from criticizing the internal workings of his union. Such inference was reasonable notwithstanding the lapse of a moment from the termination of the reprimand until the assault.

■ Contention is made that Farley's testimony to the effect that he was not acting within the scope of his agency should be conclusive on a reviewing court. Such contention has no basis in law. His testimony was a legal conclusion. But if it had been a pure statement of fact, the court was free to reject it and to be guided by the testimony of other witnesses and the inferences from all the evidence. ■ It is the exclusive function of the trial court to adjudge the credibility of witnesses and the weight of their testimony. (*Travis*

*Glass Co.* v. *Ibbetson,* 186 Cal. 724, 727 [200 P. 595].)
Even though contrary inferences could reasonably have been drawn, the appellate court cannot make contrary findings where the trial court is supported by substantial proof. (*Fischer* v. *Keen,* 43 Cal.App.2d 244, 250 [110 P.2d 693].) Sufficient evidence was admitted to justify the findings above quoted.

The contention that the intermission between the reprimand and the assault destroyed the connection of the two events is not meritorious. In making findings, the court was familiar with all the circumstances. Its exclusive function was to determine whether the lapse separated the reprimand from the clubbing. Where a series of events began with a discussion and concluded with an act of violence 15 minutes later, the passing of time did not defeat plaintiff's right of recovery. (*Carr* v. *Wm. C. Crowell Co.,* 28 Cal.2d 652, 653 [171 P.2d 5].) The finding that the battery was a part of Farley's interview with respondent was warranted by the evidence.

But respondent is not without other support for his judgment. The act of Farley was ratified by appellant. Two days after the assault, respondent was invited to union headquarters where he was interviewed by appellant's financial secretary McClain. The contents of that conversation establish the union's ratification of Farley's acts. McClain said, "Well, you guys from No. 2 have given us a lot of trouble. I don't mean you; I mean your union. You guys are trying to shove those boys any way you want to. We are here and we are going to stop you . . . a lot more of you guys are going to get your heads busted in." McClain testified that he knew Farley was the steward of appellant at the time and place in question; also that he had authority to remove Farley from that office. Despite such authority, Farley was not removed. McClain effectually approved and ratified the acts of his steward by his language. The officials of the union knew that Farley, pursuant to his duties as prescribed in the "Working Rules" had tried by his interview with respondent to minimize the dissension between the hod carriers and the plasterers. From such knowledge, and his continued employment as steward, it is fairly inferable that the union ratified his acts in dealing out punishment to respondent. Since it was Farley's duty to report all disputes to his local representative and since he had first to ascertain or inquire into them, his total

behavior must have been approved by the union. At least the evidence warranted such finding.

If Farley was hired to represent the union to settle minor disputes as the trial judge observed, then "what he did in the scope of that authority, he did not merely as an individual, but as a representative of the union."

The numerous authorities cited by appellant to the effect that its agent's tortious act was done without the scope of his authority (*Godchaux* v. *Texas & Pac. R. Co.*, 144 La. 1041 [81 So. 706]; *McDermott* v. *American Brewing Co.*, 150 La. 125 [90 So. 536]; *Chase* v. *Knabel*, 46 Wash. 484 [90 P. 642, 12 L.R.A.N.S. 155]; *Home Tel. & Elec. Co.* v. *Branton*, (Tex. Civ.App.) 75 S.W.2d 627; *Copelin* v. *Berlin Dye Works & Laundry Co.*, 168 Cal. 715 [144 P. 961, L.R.A. 1915C 712]; *Figone* v. *Guisti*, 43 Cal.App. 606 [185 P. 694], etc.) are not pertinent for two reasons. (1) The court found on substantial evidence that Farley's act was committed within the scope of his authority. (2) The cited decisions involved factual situations not akin to that at bar.

The judgment is affirmed. The purported appeal from the order denying a new trial is dismissed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied July 11, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 17, 1955.