[No. G038322. Fourth Dist., Div. Three. Feb. 28, 2008.]

JUAN RODRIGUEZ FLORES, Plaintiff and Appellant, v.
AUTOZONE WEST, INC., Defendant and Respondent.

COUNSEL

Madrid Law Firm, Eduardo M. Madrid and Erica L. Madrid for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, David B. Shapiro, Allison A. Arabian and Alexander J. Harwin for Defendant and Respondent.

OPINION

**BEDSWORTH, J.**—This appeal stems from a summary judgment entered in favor of AutoZone West, Inc. AutoZone successfully asserted below that it could not be held liable for the damages caused by its employee's physical assault of a customer at an AutoZone store after the customer had spoken to him in an arguably insulting manner. According to AutoZone, the employee's conduct was outside the scope of his employment as a matter of law, because it "was not 'fairly attributable to work-related events or conditions.' " We disagree. In our view, the evidence in this case supports the reasonable inference that the altercation was attributable to work-related events; hence the trial court's decision to dispose of the case by summary judgment was improper.[1]

However, we agree with the trial court's conclusion the evidence was insufficient as a matter of law to support Flores's contention that his injuries were caused by AutoZone's breach of an independent duty of care it owed in connection with the hiring, retention and training of Erwin Gomez. Stated plainly, an employer has no duty to investigate, let alone uncover, a prospective employee's juvenile delinquency records, which are protected by law from disclosure. Nor does Flores even come close to establishing that a retail employer might owe its customers any legal duty to conduct a thorough background check on, or to administer personality tests to, each of its employees prior to allowing them contact with the public. The burden of imposing such a requirement would be extremely high, and Flores offered no evidence that its benefit might outweigh that burden. As for the assertion that Flores's injuries stemmed from AutoZone's failure to properly train Gomez, we note that it borders on the absurd to suggest that Gomez might have been dissuaded from his attack if only AutoZone had provided more training concerning the inappropriateness of punching out customers.

And finally, we also agree that AutoZone was entitled to summary adjudication of Flores's claim against it for punitive damages. The evidence

---

[1] We acknowledge AutoZone's complaint that Juan Rodriguez Flores has relied in part upon evidence to which objections were sustained below; our decision does not rest upon any such evidence.

presented in this case was insufficient as a matter of law to establish either that AutoZone had advance knowledge of Gomez's unfitness as an employee, or that it ratified his conduct in this case. Absent either circumstance, punitive damages cannot be awarded. (Civ. Code, § 3294.)

## FACTS

Flores filed his complaint against both AutoZone, and its employee, Erwin Gomez, in August of 2005. Flores alleged he was injured when Gomez brandished and struck him with a metal pipe. He further alleged that Gomez was acting in the course and scope of his employment at the time of the injury, and that AutoZone had been negligent in its hiring, training or retention of Gomez as an employee. The complaint asserted causes of action for assault, battery, "respondeat superior," negligence, premises liability, and negligent and intentional infliction of emotional distress. The complaint also sought punitive damages.

AutoZone answered the complaint and then moved for summary judgment, or alternatively for summary adjudication as to each cause of action in the complaint.[2] AutoZone acknowledged the following undisputed facts: Gomez began employment as a "parts sales manager" for AutoZone in October of 2000. One of Gomez's job duties was to answer customers' questions and assist them with finding products. Unbeknownst to AutoZone at the time it hired him, Gomez had a juvenile delinquency record reflecting a sustained allegation of attempted murder.[3]

In February of 2001, Gomez was written up for a "loud and inappropriate" conversation with an AutoZone customer. Following that incident, Gomez was warned that misconduct toward customers would not be tolerated. Although Gomez was cited for other workplace violations after the first incident, none of those subsequent violations involved misconduct toward a customer.

The incident at issue here occurred on February 15, 2004, when Flores, who was then 56 years old, went to the AutoZone store where Gomez was employed to purchase motor oil. Although Flores had seen Gomez at the store during prior visits, he did not know Gomez and had never spoken to him. Because Flores needed assistance, he made a noise to get the attention of Gomez, who happened to be standing nearby. Flores then asked Gomez the

---

[2] The court entered a default against Gomez in July of 2006.

[3] AutoZone successfully objected to the evidence offered by Flores in opposition to the motion, documenting Gomez's juvenile record. However, since AutoZone itself included in its separate statement of undisputed facts, that "Gomez had been convicted of attempted murder as a juvenile," neither the trial court, nor we, can ignore it.

price for a case of motor oil. Gomez responded by admonishing him, "Don't whistle, you say 'excuse me.'" He then inquired if Flores was too stupid to read the prices displayed on the shelf. Flores told Gomez that he shouldn't have come into work if he didn't want to work. Gomez, who was holding a metal pipe in his hand, responded with words to the effect of "no one will tell me what to do," and struck Flores on the head with the pipe.[4]

In its summary judgment motion, AutoZone argued Gomez's conduct of "attack[ing] . . . an older and smaller gentleman [with a steel pipe] can only be described as perverse and beyond any human decency" and was outside the course and scope of his employment as a matter of law. AutoZone also asserted it could not be held liable for negligent hiring based on its failure to discover that Gomez had a prior juvenile record; that there was otherwise no evidence of negligence; and that none of its alleged acts or omissions was the legal cause of Flores's injury. Finally, AutoZone contended the evidence was insufficient, as a matter of law, to support the imposition of punitive damages against it.

Flores opposed the motion, arguing that because interacting with customers was a part of Gomez's job duties, a jury could reasonably conclude his act of physically attacking Flores, after Flores inquired about the case price of motor oil, fell within the course and scope of his employment. Flores also contended there were triable issues of fact relating to whether AutoZone had acted negligently in hiring and retaining Gomez as an employee, because there was evidence that (1) he had a propensity for violence; (2) AutoZone failed to reasonably investigate his past conduct which could have revealed that propensity;[5] (3) AutoZone failed to administer the "Orion" test to screen Gomez as a prospective employee; and (4) AutoZone was aware Gomez had treated customers rudely prior to the incident with Flores. Finally, Flores asserted there were triable issues of fact relating to his contention that AutoZone had been negligent in its training of Gomez.

Despite Flores's opposition, the court granted the motion. The court's minute order stated "[AutoZone] established that Gomez' conduct was un-foreseeable to place Gomez within the course and scope of employment with Auto[Z]one at the time of his intentional, independent acts. [AutoZone]

---

[4] There is some dispute as to the exact words exchanged, but those exact words are immaterial to the merits of the summary judgment motion. What is undisputed is that Gomez struck Flores on the head with a metal pipe following an oral exchange relating to Flores's inquiry about the price of motor oil.

[5] In connection with this assertion, Flores offered evidence that his own private investigator ran a "criminal background check" on Gomez, which revealed his juvenile record. We note that AutoZone did run its own criminal background check on Gomez, which apparently did not turn up the juvenile record.

further established that it did not breach any independent duty of care it owed to [Flores] as alleged in the operative complaint."

I

In *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291 [48 Cal.Rptr.2d 510, 907 P.2d 358], our Supreme Court outlined the principles applicable to determining whether an employer may be held liable, on a theory of respondeat superior, for the intentional tort of an employee: "The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment. (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967 [227 Cal.Rptr. 106, 719 P.2d 676].) Equally well established, if somewhat surprising on first encounter, is the principle that an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts. (*Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 209 [285 Cal.Rptr. 99, 814 P.2d 1341]; *John R.* v. *Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 447 [256 Cal.Rptr. 766, 769 P.2d 948]; *Carr* v. *Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 654 [171 P.2d 5].) What, then, is the connection required between an employee's intentional tort and his or her work so that the employer may be held vicariously liable? [¶] It is clear, first of all, that California no longer follows the traditional rule that an employee's actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer's interests. (See Rest.2d Agency, § 228, subd. 1(c) [conduct must be 'actuated, at least in part, by a purpose to serve the master'].) Our departure from that limiting rule dates at least from the leading case of *Carr* v. *Wm. C. Crowell Co., supra,* 28 Cal.2d 652. [¶] In *Carr,* this court held a building contractor liable for injuries caused when an employee, angry at a subcontractor's employee for interfering in his work, threw a hammer at the other worker's head. We rejected the defendant's claim its employee was not acting within the scope of employment because he 'could not have intended by his conduct to further' the employer's interests: '*It is sufficient, however, if the injury resulted from a dispute arising out of the employment. . . . "It is not necessary that the assault should have been made 'as a means, or for the purpose of performing the work he (the employee) was employed to do.'* " ' (28 Cal.2d at p. 654, quoting *Hiroshima* v. *Pacific Gas & Elec. Co.* (1936) 18 Cal.App.2d 24, 28 [63 P.2d 340], italics added . . . .) [¶] While the employee thus need not have intended to further the employer's interests, the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work. This rule, too, can be traced to *Carr* v. *Wm. C. Crowell Co., supra,* 28 Cal.2d 652. There the court acknowledged

that '[i]f an employee inflicts an injury out of personal malice, *not engendered by the employment,* the employer is not liable.' (*Id.* at p. 656, italics added.) We further explained that in the case under consideration the attack was, indeed, 'an outgrowth' of the employee's work: 'Not only did the altercation leading to the injury arise solely over the performance of [the employee's] duties, but his entire association with plaintiff arose out of his employment on the building under construction.' (*Id.* at p. 657.)" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at pp. 296–298, citations & fns. omitted.)

The court went on to make clear that "The nexus required for respondeat superior liability—that the tort be engendered by or arise from the work—is to be distinguished from 'but for' causation. That the employment brought tortfeasor and victim together in time and place is not enough. We have used varied language to describe the nature of the required additional link (which, in theory, is the same for intentional and negligent torts): the incident leading to injury must be an 'outgrowth' of the employment (*Carr* v. *Wm. C. Crowell Co., supra,* 28 Cal.2d 652, 657); the risk of tortious injury must be ' "inherent in the working environment" ' (*id.* at p. 656) or ' "typical of or broadly incidental to the enterprise [the employer] has undertaken" ' (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988]). [¶] . . . The employment, in other words, must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at pp. 298–299, fn. omitted.)

The question, then, is whether an employee's physical eruption, stemming from his interaction with a customer, is a predictable risk of retail employment. Our Supreme Court has suggested it may well be: "Flare-ups, frustrations, and disagreements among employees are commonplace in the workplace and may lead to 'physical act[s] of aggression.' (See *Carr* v. *Wm. C. Crowell Co., supra,* 28 Cal.2d at p. 656; *Hodges* v. *Workers' Comp. Appeals Bd.* [(1978)] 82 Cal.App.3d [894,] 902 [147 Cal.Rptr. 546].) ' "In bringing [people] together, work brings [personal] qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flareup. . . . These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment." [Citations.]' (*Carr* v. *Wm. C. Crowell Co., supra,* 28 Cal.2d at p. 656.)" (*Torres* v. *Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1009 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

Although the courts in both *Carr* and *Parkhouse Tire Service* were addressing the risk of violence between *coworkers,* rather than between an employee and a customer, we cannot draw a meaningful distinction between

the two scenarios. The workplace stresses and strains which might cause an employee to erupt in anger are not dependent upon whether the person who happens to be standing in the line of fire is a coworker or a retail customer. (See *Greenfield v. Spectrum Investment Corp.* (1985) 174 Cal.App.3d 111, 118 [219 Cal.Rptr. 805], overruled on other grounds in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179] [Budget Rent-A-Car customer severely beaten by employee following a dispute about the amount of a required deposit]; *Stansell v. Safeway Stores, Inc.* (1941) 44 Cal.App.2d 822 [113 P.2d 264] [store manager assaulted customer in dispute about grocery order]; *Hiroshima v. Pacific Gas & Electric Co., supra,* 18 Cal.App.2d 24 [utility employee assaulted customer following dispute about payment].) In either scenario, as the foregoing authorities establish, "flare-ups [and] frustrations" are commonplace for employees during the course of their work.

Nonetheless, AutoZone argues that the altercation between Flores and Gomez in this case could not be viewed as an "outgrowth[] of employment" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 300) because it was not attributable to "work-related events or conditions" (*id.* at p. 301). According to AutoZone, it was not until *after* Gomez "had completed the appointed task of directing the plaintiff to the location where the price for motor oil was displayed," that "a spark of malice . . . was suddenly and unexpectedly ignited after [Gomez] heard he should not have come to work." That spark was "purely personal," and purportedly "had nothing to do with the price of oil, or retrieving a case off the shelf for [Flores]."

■ We are not persuaded. In our view, the anger generated during the interaction between Flores and Gomez cannot be so tidily compartmentalized—at least not as a matter of law. While it may be true that Gomez did not develop his malicious "spark" until the moment Flores made his last comment, a jury could certainly infer from his prior comments that his anger had been "sparked" at an earlier point. "Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and *no conflicting inferences are possible.*' " (*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at p. 213, italics added.) Here, even if the "facts" could be characterized as undisputed, the possible inferences to be drawn from those facts cannot.

*Stansell v. Safeway Stores, Inc., supra,* 44 Cal.App.2d 822, is instructive. In that case, the store manager had engaged in a dispute with a young customer regarding the existence of a "county relief order" to pay for the customer's groceries. Although the manager had become "angry" during a telephone call

with the customer's mother regarding the existence of the order, he was not violent. It was only after he escorted the customer to the door, and they exchanged insults (he called her mother a "damned bitch" and she responded that if her mother was a bitch, he was a "bastard"), that he "started for" her, she ran, and he caught and beat her in the parking lot. (*Id.* at p. 823.) The court there had no problem construing the altercation as occurring during the course and scope of the manager's employment, even though he had not actually become violent until the customer referred to him in a *personally insulting* way. As the court explained: "He first lost his temper while he was handling the matter of the order, which was clearly in the line of his duty. He became more angry in answering a question asked by the girl with respect to the groceries, and in replying to that question accused her mother of lying and called the mother a vile name. The girl's answering epithet increased his anger but *did not change the nature of the quarrel which arose in, from and as a part of his performance of the duty for which he was employed. He was on duty at all times, the girl was dealing with him for this reason, the matter was still being discussed and had not been completed when the final phase started, the entire controversy was closely connected with his work, and the matter was continuous and of brief duration.* . . . The matter being one which was a question of fact for the trial court it cannot be said that the court's finding that the acts were committed in the course and within the scope of his employment is not sustained by the evidence." (*Id.* at pp. 825–826, italics added.)[6]

In this case, just as in *Stansell*, a jury could reasonably conclude Flores's "personal" remark to Gomez—which AutoZone contends was the immediate cause of his violent act—was merely the last phase of the quarrel that began when Flores first made the "noise" intended to get Gomez's attention and assistance with his intended purchase of motor oil.

The analysis in *Caldwell v. Farley* (1955) 134 Cal.App.2d 84 [285 P.2d 294], is also instructive. In that case, the defendant Farley, a union steward, struck a worker (a member of a different union) at a jobsite. The assault followed a verbal altercation concerning the worker's earlier comments on the advisability of a strike. On appeal, the union argued Farley's violent act was outside the scope of his employment. The court responded by first noting

---

[6] The court went on to emphasize that the initial dispute "resulted, at least in part, from his mistaken and excessive zeal in performing his duty as manager of the store. Any personal element, involving his reaction to the girl's epithet, was incidental and additional to his obvious purpose to protect the interest of the store, to complete the transaction, and to get rid of the girl." (*Stansell v. Safeway Stores, Inc., supra,* 44 Cal.App.2d at p. 826.) However that emphasis reflected the state of law at that time, which restricted respondeat superior liability to situations in which the employee was specifically acting *for the benefit* of his employer. That requirement was subsequently disposed of in *Carr v. Wm. C. Crowell Co., supra,* 28 Cal.2d at page 654, and we consequently do not consider it.

that "[i]f Farley's words and act were not within the scope of his employment, it is not conceivable in what scope they were. The men were holding neither a formal party nor a picnic. The workers were congregating to enter upon their duties. Farley's words concerned only the affairs of his union and the grievances of its members toward respondent." (*Id.* at p. 89.) The court then explained that even assuming it were possible to infer that the violent act was unrelated to the defendant's union work, it was nonetheless bound by the contrary conclusion reached by the trial court: "While the evidence was such that an inference might have been drawn that the blow was dealt at a time after the reprimand to respondent and was the result of respondent's work, yet the court found that '. . . at the time said blow was struck, defendant Eugene Farley was the agent of . . . Local 802 and was acting within the scope of said agency.' " (*Ibid.*)

In this case, as in both *Stansell* and *Caldwell*, the possible inferences to be drawn from the "undisputed" facts are themselves subject to dispute. As a consequence, the court erred in denying Flores an opportunity to present his case at trial.

Finally, we note that AutoZone cites *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003 [47 Cal.Rptr.2d 478, 906 P.2d 440], as establishing the policies to be considered in determining whether vicarious liability should be imposed in a particular case. Those factors are: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Id.* at p. 1013, citing *Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at p. 209.) However, in our view, those policies lend more support to Flores's claim than to AutoZone's defense. Both "greater assurance of compensation for the victim" and "ensur[ing] that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury," militate in favor of liability under these circumstances. As to the latter, it is clear AutoZone benefits from the willingness of customers to come into its stores and interact with its employees regarding the purchase automobile parts and supplies. AutoZone cannot simply accept those benefits, yet disclaim any involvement when the interaction turns negative.

Moreover, the fact substantial penalties—both criminal and civil—already exist to deter persons from engaging in intentional assaultive behavior does not demonstrate that such conduct should never be the subject of respondeat superior liability—if it did, that would amount to a blanket prohibition on such liability. And that is not the law.

To be clear, we are not now concluding AutoZone is necessarily liable, on a theory of respondeat superior, for Gomez's violent assault in this case.

Given the posture of this appeal, the only issue before us is whether the trial court could properly determine, as a matter of law, that it *was not liable* on that theory. We conclude only that the court could not properly make that determination, and that the claim must consequently be remanded to the trial court for further proceedings.

## II

Flores next argues, albeit less successfully, that the court erred in concluding AutoZone breached no "independent duty of care" it allegedly owed to Flores. Specifically, Flores contends there are triable issues of fact concerning whether AutoZone was negligent in "hiring, training, and retaining Gomez as [its] employee." According to Flores, the evidence suggests AutoZone could have discovered Gomez had a prior juvenile delinquency record, or otherwise determined he had "dangerous propensities," if only it had made a better effort to either investigate his past, or subject him to personality screening, prior to hiring him. Because AutoZone "could have" discovered this information, Flores argues, in essence, that it should be treated as though it *did* have that knowledge. This logical leap enables Flores to contend it was improper for the trial court to dismiss this claim as a matter of law.

We disagree. Conspicuously missing from Flores's analysis is any authority supporting the implicit proposition that AutoZone had a *legal duty* to conduct the sort of thorough background checks, or administer the sort of personality screening tests, which Flores suggests might have yielded the information about Gomez's violent nature.

■ Most easily disposed of is Flores's assertion that AutoZone had some duty to investigate whether a prospective employee might have a prior juvenile delinquency record. The confidentiality of such records is protected by law. (Welf. & Inst. Code, §§ 827–828.) Recognizing a duty on the part of an employer to uncover those records is simply inconsistent with that confidentiality policy, so we must decline to do so.

Flores's other contentions regarding the types of information AutoZone might have uncovered had it conducted a more thorough investigation of Gomez prior to hiring him fare no better. In essence, Flores's entire argument is that because AutoZone *could have* done more investigation prior to hiring Gomez, it was *legally required* to do so. We do not think it is that simple.

■ Both the existence and the scope of a duty of care are questions of law. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Moreover, "the scope of the duty is determined in part by balancing the foreseeability of the harm against the

burden of the duty to be imposed." (*Id.* at p. 678.) Because the trial court ruled against Flores on this point of law, it is his burden on appeal to establish affirmatively that the court erred in doing so. However, Flores has failed to sustain that burden. Rather than attempting to balance the forseeability of harm to a customer such as himself against the burden imposed on a retailer by requiring that it must conduct extensive background checks and screening tests on each prospective employee who is expected to have contact with the public, Flores has simply asserted that AutoZone should have done whatever it could have. That is not the law, and Flores has consequently failed to demonstrate error in the court's ruling on this point.

Flores also contends there were triable issues of fact relating to whether AutoZone was negligent in retaining Gomez as an employee despite his record of prior discipline. Again we cannot agree. As Flores demonstrates in a chart included in his brief, Gomez had only one incident of "misconduct toward a customer" prior to the incident at issue in this case. In that prior incident, which occurred fully three years earlier than the altercation with Flores, Gomez was cited for a "loud and inappropriate" conversation with a customer. There was no evidence of any violence. In the interim, Gomez was cited for other infractions, but those consisted of tardiness, or issues relating to his handling of the cash register.[7]

In short, Flores is suggesting AutoZone had a legal duty to terminate Gonzales as a potentially violent employee, simply because it was aware he had once raised his voice at a customer three years earlier. We think not. While an employer might reasonably choose to terminate an employee who was rude to even one customer, it does not follow that an employer necessarily acts *unreasonably* if it chooses not to do so.

Finally, Flores suggests there are triable issues of fact pertaining to his allegation AutoZone was negligent in its training of Gomez. Flores notes that while Gomez was given an employee handbook, and required to sign an acknowledgement reflecting he was familiar with the policies and procedures contained in it, no one actually made sure *he had actually read it and understood it*. But implicit in this claim is the assertion that Gomez's decision to physically attack Flores might have been caused by his failure to understand that such an act would contravene AutoZone's policies. This does not pass the straight face test. There is simply no reasonable basis to conclude that Gomez's act of criminally assaulting a customer was somehow the result of AutoZone's failure to make clear that such conduct would not be considered an acceptable employee act.

---

[7] There was also evidence from another employee, reflecting his own impression that Gomez sometimes exhibited a rude "attitude" when interacting with customers. However, that employee was not a management-level employee, and there was no evidence he reported his impressions about Gomez to management.

Because Flores has failed to demonstrate that any of the acts or omissions allegedly committed by AutoZone itself, in the context of hiring, training or retaining Gomez as an employee, breached a duty of care which it owed directly to Flores, we conclude the court did not err in summarily adjudicating the causes of action premised on those acts or omissions.

### III

Finally, we conclude the trial court did not err in summarily adjudicating Flores's claim for punitive damages in this case. Because the only viable theory of liability asserted against AutoZone is one based upon respondeat superior, the availability of punitive damages is controlled by Civil Code section 3294, subdivision (b). That provision states: "An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

As we have already explained, the evidence in this case was insufficient as a matter of law to demonstrate AutoZone had advance notice that Gomez was an "unfit" employee, or employed him with conscious disregard of the rights or safety of others.

Similarly there is insufficient evidence to sustain the conclusion that AutoZone "ratified" Gomez's violent treatment of customers. The only evidence AutoZone was aware of prior to the altercation with Flores was the one incident three years earlier, in which Gomez had raised his voice inappropriately with a customer. The record reflects that in the wake of that earlier incident, Gomez was both written up for the violation and counseled about it. There is simply no evidence that AutoZone ratified or condoned such conduct. As for the incident in this case, the evidence demonstrates Gomez was promptly fired in its wake. There is consequently no evidence of "ratification," and the court did not err in disposing of the punitive damages claim.

The judgment is reversed. The case is remanded to the trial court with directions to vacate its earlier order and enter an order summarily adjudicating, in favor of defendant AutoZone only, Flores's fourth cause of action (alleging negligent hiring, training and/or retention of unfit employee); his

fifth cause of action (alleging negligence); his sixth cause of action (alleging premises liability); his eighth cause of action (alleging negligent infliction of emotional distress) and his claim for punitive damages. Flores is to recover his costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.