Filed 3/13/14 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SARA MONTAGUE et al., | D063385 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00090137-CU-PO-CTL) |
| AMN HEALTHCARE, INC., | ORDER DENYING REHEARING AND MODIFYING OPINION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The petition for rehearing is denied.

It is ordered that the opinion filed on February 21, 2014, be modified as follows:

1. On page 7 of the opinion the last paragraph which continues onto page 8 is deleted, and the following is inserted:

> Montague's separate statement contained no evidence regarding the scope of Drummond's employment with either Nursefinders or Kaiser. While Drummond testified she generally knew that carbolic acid was used for patients with foot issues, it is unknown what specific job duties Drummond had at Kaiser and whether her duties involved the use of carbolic acid. It is also unknown whether Drummond committed the poisoning during working hours or what motivated Drummond to poison Montague.

2. On page 8 of the opinion the last sentence which continues onto page 9 is deleted, and the following is inserted:

Montague presented no evidence that these past work-related disputes, rather than Drummond's personal animosity toward Montague unrelated to Drummond's work for Kaiser, motivated her actions.

3.  On page 9 of the opinion the last paragraph is deleted, and the following is inserted:

Here, the evidence regarding Kaiser's potential vicarious liability consisted of the deposition testimony of Drummond and Montague. The portions of Drummond's deposition testimony included in the record on appeal provides no evidence regarding her interactions with Montague at work or outside of work and sheds absolutely no light on what motivated her to poison Montague.  The portions of Montague's deposition testimony included in the record on appeal contain no evidence whether she interacted with Drummond outside of work and few details regarding her interactions with Drummond at work.  Even assuming the evidence supports an inference that the poisoning arose out of a work-related dispute that occurred weeks earlier, the dispute concerned Drummond and Montague's mutual work for Kaiser, not Nursefinders.  Montague's attempt to establish respondeat superior liability for Nursefinders simply because she and Drummond worked together at Kaiser is misguided.  "The nexus required for respondeat superior liability—that the tort be engendered by or arise from the work—is to be distinguished from 'but for' causation.  That the employment brought tortfeasor and victim together in time and place is not enough."  (*Lisa M.*, *supra*, 12 Cal.4th at p. 298, fn. omitted.)  The facts, construed most favorably for Montague, do not support liability against Nursefinders because Drummond's poisoning of Montague was highly unusual and startling.

**There is no change in the judgment.**

McINTYRE, Acting P. J.

Copies to:  All parties

2

Filed 2/21/14 (unmodified version)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SARA MONTAGUE et al., | D063385 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00090137-CU-PO-CTL) |
| AMN HEALTHCARE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Steven Denton, Judge. Affirmed.

The Law Offices of Samuel Dagan, Samuel Dagan and Lisa Dearden Trepanier for Plaintiffs and Appellants.

Cole Pedroza, Curtis A. Cole and Cassidy C. Davenport; Susson, Parrett & Odell, Steven R. Odell and Edward L. Schumann, for Defendants and Respondents.

In this case, a staffing company hired an employee to work as a medical assistant and then assigned that employee to work at a customer's facility. While at the customer's facility, the employee poisoned a coworker. The coworker sued the staffing company

alleging theories of vicarious liability and negligence. We conclude the trial court properly granted summary judgment in favor of the staffing company because the employee acted outside the course and scope of her employment.

FACTUAL AND PROCEDURAL BACKGROUND

AMN Healthcare, Inc., dba Nursefinders (Nursefinders) is a staffing company that provides prescreened nurses and medical personnel to hospitals and other facilities. Nursefinders hired Theresa Drummond as a medical assistant. It later assigned Drummond to work at a Kaiser facility as a medical assistant. Plaintiff Sara Montague was also a medical assistant at Kaiser. At some point, Drummond and Montague had a disagreement at work regarding how rooms were to be stocked. At the end of the discussion Montague walked away. Montague did not consider the argument serious enough to report to a supervisor or anyone else. They also had a discussion regarding misplaced lab slips where Drummond raised her voice. A few weeks after that discussion, Montague left her water bottle at work. Montague later drank from her water bottle. Her tongue and throat started to burn and she vomited. Drummond admitted that she poured carbolic acid found in a Kaiser examination room into Montague's water bottle.

Montague and her husband sued Drummond and Nursefinders. As to Nursefinders, she alleged causes of action for negligence, battery, negligence per se and intentional infliction of emotional distress under a theory of respondeat superior. She also alleged that Nursefinders negligently hired, retained, supervised and trained Drummond. Montague's husband alleged a claim for loss of consortium.

2

Nursefinders moved for summary judgment or in the alternative, summary adjudication of all causes of action, arguing that the causes of action based on respondeat superior liability fail because Drummond (1) was a special employee of Kaiser, or (2) acted outside the course and scope of her employment. It also asserted that no triable issues existed on Montague's negligence claim and the lack of a viable cause of action precluded a derivative loss of consortium claim.

The trial court tentatively granted the motion, finding the claims based on respondeat superior liability failed because undisputed evidence established that Drummond was a special employee of Kaiser. It also concluded that Montague did not establish a triable issue of fact regarding negligent hiring, retention or supervision and that her claim regarding negligent training failed based on lack of causation. The court entered a judgment in favor of Nursefinders and Montague timely appealed contending triable issues of material fact precluded summary judgment.

## DISCUSSION

### I. *Standard of Review*

A motion for summary judgment is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the undisputed facts warrant judgment for the moving party. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) When analyzing the underlying motion, we apply the same three-step analysis used by the trial court. (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1431-1432.) We identify the issues framed by the

3

pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue. (*Id*. at p. 1432.)

"We will affirm an order granting summary judgment or summary adjudication if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Securitas Sec. Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.) Accordingly, even when the trial court does not rule on an argument properly presented in summary judgment proceedings, we may nonetheless consider it on appeal. (*Gordon v. Havasu Palms, Inc.* (2001) 93 Cal.App.4th 244, 255.)

## II. *Vicarious Liability Causes of Action*

" 'Where an employer sends an employee to do work for another person, and both have the right to exercise certain powers of control over the employee, that employee may be held to have two employers—his original or "general" employer and a second, the "special" employer.' " (*Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d 168, 174-175.) A general employer is absolved of respondeat superior liability when it has relinquished total control to the special employer. (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 216.) During this period of transferred control, the special employer becomes solely liable under the doctrine of respondeat superior for the employee's job-related torts. (*Wilson v. County of San Diego* (2001) 91 Cal.App.4th 974, 984.)

4

Here, the trial court found the undisputed evidence established that Nursefinders was absolved of any respondeat superior liability because Drummond was a special employee of Kaiser and had no control over the injury producing event. We need not address this issue because, even assuming Nursefinders retained some control over Drummond so as to render it jointly and severally liable for Drummond's acts, Montague's vicarious liability claims fail on the alternative ground that Drummond acted outside the course and scope of her employment. Although the trial court did not rule on this argument, Montague addressed the issue in her opposition to the motion. Both parties also addressed the issue in their briefing on appeal. (Code Civ. Proc., § 437c, subd. (m)(2).)

Under the doctrine of respondeat superior, "an employer is vicariously liable for the torts of its employees committed within the scope of the employment." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 (*Lisa M.*).) The plaintiff bears the burden of proving that the employee's tortious act was committed within the scope of his or her employment. (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 721.) "Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible.' " (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213.)

Although an employee's willful, malicious, and even criminal torts may fall within the scope of employment, "an employer is not strictly liable for all actions of its employees during working hours." (*Farmers Ins. Group v. County of Santa Clara* (1995)

5

11 Cal.4th 992, 1004 (*Farmers*).) For the employer to be liable for an intentional tort, the employee's act must have a "causal nexus to the employee's work." (*Lisa M.*, *supra*, 12 Cal.4th at p. 297.) Courts have used various terms to describe this causal nexus: the incident leading to the injury must be an " 'outgrowth' " of the employment; the risk of tortious injury must be " ' "inherent in the working environment" ' "; the risk must be " ' "typical" ' " or " ' "broadly incidental" ' " to the employer's business; the tort was " 'a generally foreseeable consequence' " of the employer's business. (*Id.* at pp. 298-299.)

" 'One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity.' " (*Farmers*, *supra*, 11 Cal.4th at pp. 1003-1004, italics omitted.) " '[F]oreseeability' [in the context of determining scope of employment] merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Id.* at p. 1004, italics omitted.)

These various terms have been condensed into a two-prong disjunctive test. (*Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, 1559, 1561 ["the two-prong test is substantively similar to the foreseeability-based test"].) The conduct of an employee falls within the scope of his or her employment if the conduct either: (1) is required by or incidental to the employee's duties, or (2) it is reasonably foreseeable in light of the employer's business. (*Id.* at p. 1559; see CACI No. 3720.)

Nursefinders presented evidence that it is a staffing agency that Drummond did not work for; rather, Drummond applied for medical assistant positions through Nursefinders. Drummond obtained a medical assistant position at Kaiser through Nursefinders. This evidence satisfied Nursefinders initial burden of showing that Drummond's acts were not required by or incidental to her employment with Nursefinders or that her acts were reasonably foreseeable in light of Nursefinders's business. Accordingly, the burden of production shifted to Montague. (Code Civ. Proc., § 437c, subd. (p)(2).)

We first consider whether Montague presented evidence showing that Drummond's acts were required by or incidental to her employment with Nursefinders. In evaluating this factor, occupational duties are broadly defined. (*Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139 (*Alma W.*) "The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer. [Citation . . . However, that is not to say, that employers are strictly liable for all actions of their employees during working hours. If an employee substantially deviates from his duties for personal purposes, the employer is not vicariously liable for the employee's actions." (*Id.* at p. 139.)

Montague presented no evidence regarding the scope of Drummond's employment with either Nursefinders or Kaiser. While Drummond testified she generally knew that carbolic acid was used for patients with foot issues, it is unknown what job duties

7

Drummond had at Kaiser and whether her duties involved the use of carbolic acid. It is also unknown whether Drummond committed the poisoning during working hours.

We next consider whether Montague presented evidence showing Nursefinders could have reasonably foreseen that Drummond would poison a coworker at Kaiser. First, Drummond testified that she "poured" the carbolic acid into Montague's water bottle. Although Montague argues this evidence supports an inference that Drummond acted negligently, Drummond's testimony is not subject to differing inferences and establishes she committed an intentional act. (Evid. Code, § 600, subd. (b) ["An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action."].)

An injury arising out of a work-related dispute has such a causal nexus, while an injury inflicted out of the employee's personal malice, not engendered by the employment, does not. (*Lisa M.*, *supra*, 12 Cal.4th at pp. 297-298.) Montague asserts summary judgment is not appropriate because the evidence shows the poisoning arose out of a work-related dispute. The evidence shows that a few weeks or months before the incident, Drummond and Montague had a disagreement at work regarding how rooms were to be stocked, but Montague did not consider the dispute to be serious. They also had a discussion regarding misplaced lab slips where Drummond raised her voice. A few weeks after that discussion, Drummond poisoned Montague's water bottle. Although Montague asserts the poisoning took place a day or two after arguing with Drummond about the misplaced paperwork, the evidence she cited does not support this assertion. Montague presented no evidence that these past work-related disputes, rather than

8

Drummond's personal animosity toward Montague unrelated to Drummond's employment with Kaiser, motivated her actions. (Compare, *Carr v. Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 657 [the fact employee and coworker victim had never conversed before the dispute indicated dispute arose out of employment]; *Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472, 476, 486 [trial court committed reversible error in ruling, as a matter of law, that restaurant worker's act of throwing hot oil at police officer there to break-up work-related dispute was within the scope of his employment for purposes of respondeat superior liability against restaurant]; *Rodgers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 615, 621 [when dispute arose, victims were complete strangers to assailants who worked at same job site, thus dispute was within the scope of employment].)

Even assuming the evidence supports an inference that the poisoning arose out of a work-related dispute that occurred weeks earlier, the dispute concerned Drummond and Montague's mutual employment with Kaiser, not Nursefinders. Montague's attempt to establish respondeat superior liability for Nursefinders simply because she and Drummond worked together at Kaiser is misguided. "The nexus required for respondeat superior liability—that the tort be engendered by or arise from the work—is to be distinguished from 'but for' causation. That the employment brought tortfeasor and victim together in time and place is not enough." (*Lisa M.*, *supra*, 12 Cal.4th at p. 298, fn. omitted.) The facts, construed most favorably for Montague, do not support liability against Nursefinders because Drummond's poisoning of Montague was highly unusual and startling.

9

Finally, the public policy factors underlying the doctrine of respondeat superior do not support the imposition of vicarious liability to Nursefinders under these facts. These public policy factors are: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Farmers*, *supra*, 11 Cal.4th at p. 1013.) Here, the potential for civil and criminal liability provides a deterrent to the type of aberrant conduct that Drummond committed. (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 284-287, 297 [court deemed employee's act of forcing another car off the road to be aberrant behavior that the majority of motorists did not engage in, so there was no deterrent effect in imposing liability on the employer].) Additionally, while invoking vicarious liability under these facts would provide greater assurance of compensation to victims, Nursefinders derived no benefit from Drummond's conduct and it would be inequitable to shift the loss to Nursefinders. (*Alma W.*, *supra*, 123 Cal.App.3d at pp. 143-144.)

### III. *Negligence Cause of Action*

The trial court concluded that Montague did not establish a triable issue of fact regarding her claim that Nursefinders negligently hired, retained or supervised Drummond. Montague does not challenge the ruling on the issues of negligent hiring, retention or supervision. Accordingly, we focus on Montague's remaining claim for negligent training.

10

Montague alleged that Nursefinders had a duty to train Drummond regarding the proper handling of work-related disputes and that its negligence in this regard caused her harm. As a preliminary matter, we will assume without deciding, that Nursefinders had a duty to train its employees regarding the avoidance of workplace violence. (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1140 [Liability for negligent hiring, training, and supervision " 'is limited by basic principles of tort law, including requirements of causation and duty.' "].)

The trial court concluded that Montague's negligence cause of action failed based on lack of causation. Montague asserts the trial court erred because a jury could conclude that Drummond's intentional act was caused by the failure of Nursefinders to train her on avoiding workplace violence and, to the extent a jury could conclude that Drummond acted negligently, her negligent act was caused by the failure of Nursefinders to train her on handling hazardous chemicals. We do not address the latter argument as this theory of liability was not alleged in Montague's complaint. (*Powell v. Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 365 [pleadings define the issues on motion for summary judgment].) Moreover, as addressed above, the evidence does not support an inference that Drummond acted negligently. (*Ante*, pt. II.)

Drummond and the Nursefinders's branch director signed a document verifying that Drummond participated in Nursefinders's orientation which explained certain topics including "Workplace Violence." Nursefinders also admitted it trained Drummond on Kaiser's policies and procedures regarding "Violence in the Workplace" and "Management of Threats and Aggressive Behavior." Montague cites to Drummond's

11

deposition testimony and her response to an interrogatory to show Drummond did not receive the specified training. Review of this evidence does not support her contention.

When asked whether Nursefinders "train[ed] her," Drummond responded "no." A follow-up question then clarified that Drummond had already been trained as a medical assistant when Nursefinders hired her. Additionally, when asked to identify the persons employed by Nursefinders who were responsible for training her, Drummond responded that although the term "training" was vague, she did not receive training from Nursefinders. This evidence regarding unspecified training does not conflict with Nursefinders's sworn responses to request for admissions that it trained Drummond on Kaiser's policies and procedures regarding "Violence in the Workplace" and "Management of Threats and Aggressive Behavior." At most, Drummond's testimony and interrogatory response hints at a possible issue that Nursefinders failed to provide the specified training, however, speculative inferences do not raise a triable issue of fact. (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161 [inferences offered to oppose summary judgment must be reasonably deducible from the evidence and not derived from "speculation, conjecture, imagination, or guesswork"].)

Montague's argument appears to be that because Nursefinders trained Drummond on avoiding workplace violence and the incident occurred, this evidence supports an inference that Nursefinders must have breached its duty to train Drummond in avoiding workplace violence and this breach caused her injuries. We reject this contention as the suggested inferences are based on speculation and not reasonably deducible from the evidence. Montague "cannot survive summary judgment simply because it is possible"

12

that Nursefinders breached a duty to provide training regarding the avoidance of workplace violence and that this breach "might have" caused her injury. (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 483, italics deleted.)

For example, a similar argument was rejected in *Flores v. Autozone West, Inc.* (2008) 161 Cal.App.4th 373 (*Flores*). In *Flores*, a customer attacked by a store employee claimed that triable issues of fact existed because no one actually made sure that the employee had read and understood an employee handbook. The court disagreed, stating "implicit in this claim is the assertion that [the employee's] decision to physically attack [the customer] *might have been caused* by his failure to understand that such an act would contravene [the store's] policies. This does not pass the straight face test. There is simply no reasonable basis to conclude that [the employee's] act of criminally assaulting a customer was somehow the result of [the store's] failure to make clear that such conduct would not be considered an acceptable employee act." (*Id.* at p. 385, italics added.)

Because the evidence does not allow a reasonable jury to find for Montague by a preponderance of evidence, Nursefinders is entitled to summary judgment of this claim. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851.)

### III. *Loss of Consortium*

The loss of consortium claim by Montague's husband is derivative of Montague's claims. (*Davis v. Consolidated Freightway*s (1994) 29 Cal.App.4th 354, 358, fn. 1.) Because we conclude that Montague's negligence and vicarious liability claims fail, her husband's loss of consortium claim also fails. (*Ibid.*)

13

DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.


                                                                    McINTYRE, J.

WE CONCUR:


McCONNELL, P. J.


McDONALD, J.