Opinion by Judge NOONAN; Partial Concurrence and Partial Dissent by Judge BYBEE.
OPINION
NOONAN, Circuit Judge:
Xue Lu (Lu) and Jie Hao (Hao) appeal the judgment of the district court dismissing their suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), and other claims against the United States and various officials. The FTCA incorpo *946 rates the law of the state in which the tort is alleged to have occurred, in this case California, so that we are bound to interpret and apply the law California would apply to a private employer. We affirm in part, reverse in part, and remand for further proceedings.
FACTS
We take the facts alleged by the plaintiffs as true for the purposes of this opinion. Nurse v. United States, 226 F.3d 996, 1000 (9th Cir.2000).
Lu and Hao are each citizens of the People’s Republic of China. Each was lawfully admitted to the United States as a non-immigrant, and each filed an application for asylum on political grounds. Each received an initial interview with Thomas A. Powell, Jr. What happened thereafter is the basis for their suit.
On February 15, 2000, Lu was interviewed by Powell, aged 58, who had served seven years as an Asylum Officer in the Immigration and Naturalization Service in Los Angeles. An asylum officer had the authority to grant Lu’s request for asylum. See 8 C.F.R. § 208.14(b). If the asylum officer did not decide to grant the request, Lu’s case would be referred to a hearing before an immigration judge. See 8 C.F.R. § 208.14(c)(1). Powell’s exercise of authority in her favor could avoid such a hearing and confer upon her the benefit of indefinite lawful asylee status. See 8 C.F.R. § 208.14(e).
Approximately a week after her interview, Powell telephoned Lu and told her that he would meet her at her residence in Monterey Park. No one else should be present. On February 26, Powell appeared at her apartment and began discussion of her case, stating that he had helped others and could help her. Payment made to him, he insinuated, would make him approve her application. He then attempted to unzip and remove her pants. When she rebuffed him, he told her that her application for asylum would be denied. On March 1, 2000, he issued the denial.
Lu informed her lawyer of Powell’s offer and overtures. By chance, her lawyer was also representing Hao, who had her initial interview with Powell on May 22, 2000. Three days after the interview, Powell telephoned Hao, stating that he would like to confer with her alone at her residence regarding the details of her application. He said he had an offer for her that had to be kept secret between them. She agreed to meet him on June 4.
Before the meeting, Hao called her lawyer. Already alerted by Lu, the lawyer contacted the Justice Department, which in turn arranged for Hao to be wired for her meeting with Powell.
On June 4, Powell arrived at Hao’s residence. He began to tell her of problems in her application for asylum. Powell said they could be solved if she paid him $2,000. He offensively touched private parts of her body. They agreed to meet again on June 8 for Powell to collect the money. On June 8, Hao was again wired. Powell returned to get the $2,000 and received it. He again engaged in sexual molestation of the asylum applicant.
As a result of the sting, the United States indicted Powell for his misconduct with both women. August 10, 2004, Powell was convicted by a jury of deprivation of Lu’s civil rights under color of law in violation of 18 U.S.C. § 242 and on November 20 was sentenced to imprisonment of one year. He was also convicted of seeking bribes from both Lu and Hao in violation of 18 U.S.C. § 201(B)(2)(A) and was sentenced to a term of three years and nine months, to run concurrently with the first sentence. Powell died in prison not long after his incarceration and prior to *947 the resolution of his appeal. As a result, his conviction was vacated and the indictment against him was dismissed.
PROCEEDINGS
February 23, 2001, Lu and Hao filed this action against Powell; his supervisor, Robert Looney; his employer, the United States; and ten unknown agents of the United States. The district court dismissed several counts, giving plaintiffs leave to amend. The action was stayed during the pendency of the criminal case against Powell. After further amendments by the plaintiffs and rulings by the district court, Looney settled, the unknown agents were dismissed by stipulation, and on July 1, 2008, the district court entered final judgment against the plaintiffs for failure to state a cause of action under the FTCA.
August 27, 2008, this appeal followed.
ANALYSIS
Jurisdiction and standard of review. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the dismissal for failure to state a claim. Cervantes v. United States, 330 F.3d 1186, 1187 (9th Cir.2003).
Criteria. Under the FTCA, the United States is only liable “under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.” 28 U.S.C. § 1346(b)(1). Both sides discuss Mary M. v. City of Los Angeles, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341 (1991), which involved a Los Angeles police officer who, while on duty, raped a woman. Because it involved a public employer, Mary M. “provides less than compelling precedent,” Lisa M. v. Henry Mayo Newhall Mem’l Hosp., 12 Cal.4th 291, 48 Cal.Rptr.2d 510, 907 P.2d 358, 366 (1995), for weighing the liability of private employers, as we must under 28 U.S.C. § 1346(b)(1). A public-entity case, however, can offer some guidance, to the extent it illuminates general principles of respondeat superior liability that apply in California to public and private employers alike. See Mary M., 285 Cal.Rptr. 99, 814 P.2d at 1344 (“[T]he Legislature incorporated general standards of tort liability as the primary basis for respondeat superior liability of public entities” and “[c]ourts have construed the term ‘scope of employment’ [in public-entity cases] as broadly as in private tort litigation”) (internal quotation marks omitted). We do not rely on Mary M. here, because liability in that case depended on “the unique authority vested in police officers.” Lisa M., 48 Cal.Rptr.2d 510, 907 P.2d at 366 (quoting Mary M., 285 Cal. Rptr. 99, 814 P.2d at 1350 n. 11). We must look, instead, to principles of respondeat superior liability that apply to private entities. See United States v. Olson, 546 U.S. 43, 45-46, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005).
According to the statute governing the liability of the United States, the United States is liable “in the same manner and to the same extent as a private individual under like circumstances.” 28 U.S.C. § 2674. “Like circumstances” are not “identical circumstances.” Congress did not require a claimant to point to a private person performing a governmental function. Indian Towing Co. v. United States, 350 U.S. 61, 64-65, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (plaintiff suing the United States for negligent operation of lighthouse does not need to find a private person operating a lighthouse; all the plaintiff needs is an analogous situation where a private person undertakes to warn the public of danger, inducing reliance on this undertaking). So in United States v. *948 Olson it was held sufficient to state a claim under the FTCA that analogies to federal mine inspectors existed in private persons who are employed to conduct safety inspections. Olson, 546 U.S. at 47, 126 S.Ct. 510. Analogy not identity of circumstance is key.
The jurisdictional statute does require that acts for which the United States as employer is to be held liable be performed by an employee “acting within the scope of his office or employment.” 28 U.S.C. § 1346(b)(1). This phrase must be applied according to the law of the state where the alleged tort occurred. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955).
The scope of Powell’s employment. The nub of the district court’s decision to dismiss was its conclusion that Powell in his interactions with Lu and Hao was not acting within the scope of his employment as an asylum officer. Obviously the United States had not employed him to prey on asylum petitioners or seek graft from their perilous predicaments. Self-evidently, it may have seemed, an asylum officer gone bad had stepped out of his assigned job in order to become a predator.
 The district court correctly stated the traditional rule. See Restatement (Second) of Agency § 228 (1958). The district court, however, took insufficient account of the California variation of the general rule. As put by Justice Werdegar: “California no longer follows the traditional rule that an employee’s actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer’s interests.” Lisa M., 48 Cal.Rptr.2d 510, 907 P.2d at 361. Although “somewhat surprising on first encounter,” the principle is “well established” that “an employee’s willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts.” Id., 48 Cal.Rptr.2d 510, 907 P.2d at 360-61.
The resulting rule in California has been formulated as a form of enterprise liability. The court looks to the foreseeability of the employee’s conduct, whether it be authorized or unauthorized, tortious or criminal, because the California rule “reflects the central justification for respondeat superior [liability]: that losses fairly attributable to an enterprise — those which foreseeably result from the conduct of the enterprise — should be allocated to the enterprise as a cost of doing business.” Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 906 P.2d 440, 448 (1995).
The authoritative statement of the California rule was made by Justice Traynor in Carr v. Wm. C. Crowell Co., 28 Cal.2d 652, 171 P.2d 5 (1946). The employer was held liable for the actions of an employee who threw a hammer at the head of a fellow worker whose conduct had irritated him. Id. at 7. “Such injuries,” Justice Traynor wrote, “are one of the risks of the enterprise.” Id. When employing others, the employer takes on associations with them that “include the faults and derelictions of human beings.” Id. “ ‘The risks of such associations and conditions were risks of the employment.’ ” Id. (citing Judge Benjamin Cardozo in Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 711 (1920)).
A nexus must exist between the employment and the tort if the employer is fairly to be held liable. As put by Justice Werdegar in Lisa M., the tort must be “generally foreseeable” or “engendered by” or “arise from” the employment. Lisa M., 48 Cal.Rptr.2d 510, 907 P.2d at 362. *949 No employer instructs an employee to throw a hammer at a co-worker who displeases him. The tort in Carr grew out of the situation in which the work was performed, the jostle of one man on another, and the uncontrolled anger of the tortfeasor, motivated by no end other than to vent his anger. See Carr, 171 P.2d at 7.
Lisa M. itself draws a helpful line. In that case a technician employed by the hospital to give a pregnant patient an ultrasound examination of her abdomen completed the examination and then returned to the patient’s room and molested her sexually. Lisa M., 48 Cal.Rptr.2d 510, 907 P.2d at 360. As a matter of law, the technician’s assault did not create liability on the part of the hospital which employed him. Id., 48 Cal.Rptr.2d 510, 907 P.2d at 363-64.
Lisa M. rejected as an argument for the hospital’s liability that the abused patient was especially vulnerable in the way that all hospitalized patients are helplessly in the hands of those attending them. Lisa M., 48 Cal.Rptr.2d 510, 907 P.2d at 365 n. 6. For that reason we do not emphasize the particular vulnerability of Lu and Hao, foreigners fearing persecution if sent back. The liability of a private employer in California does not turn on the vulnerability of the victim but on the extent to which the tort of the employee is incident to his employment. See id., 48 Cal.Rptr.2d 510, 907 P.2d at 362.
In reaching the conclusion in Lisa M., Justice Werdegar set out the three considerations of policy that support the rule of respondeat superior: (1) to increase the vigilance and precautions of the employer; (2) to insure compensation for the injury; and (3) to spread the risk of loss. Id., 48 Cal.Rptr.2d 510, 907 P.2d at 366. The court was unable to say that those goals would be realized by imposing liability on the hospital. Id. Two justices (Mosk and Kennard) disagreed with this conclusion and would have gone further to posit liability. Id., 48 Cal.Rptr.2d 510, 907 P.2d at 368-73.
Reversing a trial court’s holding that a licensed real estate broker’s submission of a fraudulent loan application was not within the scope of his employment, a California court of appeal applied Lisa M., quoting verbatim its statement that the employee’s actions need not benefit the employer in order to create vicarious liability. Inter Mountain Mortgage, Inc. v. Sulimen, 78 Cal.App.4th 1434, 93 Cal. Rptr.2d 790, 794 (2006). The court of appeal noted that throughout the transaction the broker, acting to enrich himself, represented himself as the agent of the employer providing the documentation necessary for the loan. Id. at 796. The risk of a fraudulent application was “a generally foreseeable risk inherent and incidental to defendants’ mortgage loan brokerage business.” Id.
Like the loan broker, Powell was part of a process in which he was expected to participate in a lawful way, reviewing the documentation of the asylum applicant, interviewing her, and assessing the credibility of her claims. Like the loan broker, Powell abused his powers for his own benefit. In doing so, he acted within the scope of his employment as defined by California. To compensate his victims, spread the loss, and stimulate the government to greater vigilance in controlling aberrant behavior, California law makes the United States bear the cost of Powell’s conduct, unauthorized but incidental to the asylum system.
The viable tort claims. The plaintiffs point to two causes of action where a private party would be liable for the wrongful act of his employee, one under California common law, the other under a *950 California statute. We consider them in turn.
The dissent focuses on torts against employees engaging in “sexual misconduct.” The torts for which the plaintiffs may be compensated by Powell’s employer are the infliction of emotional distress and interference with their civil rights.
(1) Infliction of emotional distress. This tort at common law is distinct from assault or battery. It may be committed intentionally or recklessly. See Cervantez v. J.C. Penney Co., 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d 975, 983 (1979); Tekle v. United States, 511 F.3d 839, 855 (9th Cir.2007). An employer can be held liable for its infliction by an employee in the course of his employment. See Flores v. Autozone West, Inc., 161 Cal.App.4th 373, 74 Cal.Rptr.3d 178, 179-180, 188 (2008). In our case, if the alleged facts are proved, it was committed by Powell in each instance in which he demanded money or sexual gratification from Lu or Hao as a condition for exercising his discretion in favor of asylum.
The United States is immune from liability for an assault or battery by its employee. 28 U.S.C. § 2680(h). The alleged touchings of the women were batteries and the sexual character of these offenses may not change their gravamen. We need not decide that question. The emotional distress suffered as a result of the demand for sexual favors is an injury distinct from the battery and may be proved by the plaintiffs.
(2) Interference with the civil rights of the plaintiffs. California Civil Code § 52.1 provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion with the exercise or enjoyment of the constitutional or statutory rights of any individual, the individual may sue for damages independently of any other action that is available. Cal. Civil Code § 52.1(a)-(b); Stamps v. Superior Court, 136 Cal.App.4th 1441, 39 Cal. Rptr.3d 706, 707-08 (2006) (suit against private employer). On the facts alleged, Powell attempted such interference with the plaintiffs’ right to asylum.
The claims barred by the FTCA. The plaintiffs allege that the United States was negligent in its employment of Powell. They point to the deposition of another employee in the asylum office stating that Powell, contrary to regulations, retained an asylum file for over 400 days. The deposition is not enough to show that the United States was negligent in not detecting Powell’s predatory conduct. The United States cannot be held liable under the FTCA “based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government.” 28 U.S.C. § 2680(a); see Terbush v. United States, 516 F.3d 1125, 1128-29 (9th Cir.2008). The treatment of Powell for his violation of the regulation lay within the discretion of his supervisor. The United States is not liable for the exercise of that discretion. Nurse v. United States, 226 F.3d 996, 1001-02 (9th Cir.2000). The discretionary function exception does not apply to “[a]n action specifically prescribed by a federal statute, regulation, or policy,” because such an action is not within an agent’s discretion. Marlys Bear Med. v. United States, 241 F.3d 1208, 1213 (9th Cir.2001) (internal quotation omitted). The plaintiffs have not identified any mandatory duty to discipline Powell for retaining the file. Nor have they pointed to any specific duty under the Fifth Amendment or any specific policy to support a claim of unconstitutional policymaking. See Nurse, 226 F.3d at 1002.
*951 The plaintiffs’ claim under 8 C.F.R. § 208.9 was properly dismissed; it was not a claim for which California law would provide a remedy against a private party. The plaintiffs’ claim under Article 1, § 7 of the California Constitution does not state a claim for damages under California law. Katzberg v. Regents of University of California, 29 Cal.4th 300, 127 Cal.Rptr.2d 482, 58 P.3d 339, 358 (2002).
CONCLUSION
For the reasons stated, the order of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.