**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JAN 27 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| XUE LU and JIE HAO,<br><br>        Plaintiffs - Appellees,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant - Appellant. | No. 13-56715<br><br>D.C. No. 2:01-cv-01758-CBM-E<br><br><br>MEMORANDUM* |
| XUE LU and JIE HAO,<br><br>        Plaintiffs - Appellees,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant - Appellant. | No. 14-55442<br><br>D.C. No. 2:01-cv-01758-CBM-E |
| XUE LU and JIE HAO,<br><br>        Plaintiffs - Appellees, | No. 14-55972<br><br>D.C. No. 2:01-cv-01758-CBM-E |

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

v.

UNITED STATES OF AMERICA,

Defendant - Appellant.

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Senior District Judge, Presiding

Argued and Submitted December 9, 2015
Pasadena, California

Before: REINHARDT, FISHER, and NGUYEN, Circuit Judges.

The United States appeals a judgment against it under the Federal Tort Claims Act (FTCA) and an award of attorneys' fees to Plaintiffs. We AFFIRM the district court's damage award, but VACATE and REMAND the fee award for reconsideration.

**1.** The government contends that the district court awarded damages based on Powell's battery, which is barred by 28 U.S.C. § 2680(h). It points to, at best, one or two ambiguous statements, which when read in context do not show that the district court awarded damages for battery. Rather, the district court's opinion demonstrates that it awarded damages *only* for injuries arising out of the "instance[s] in which Powell demanded money or sexual gratification from Lu or Hao as a condition for exercising his discretion in favor of asylum." *Xue Lu v. United States*, No. 2:01-01758, 2013 WL 4007770, at ¶¶ 59, 62 (C.D. Cal. Aug. 5,

2

2013).  It found that these compensable injuries were "distinct" from those suffered as a result of Powell's battery.  *Id*. at ¶ 58.  We see no error here.

**2.** The government also continues to argue that Hao consented to Powell's torts.  The district court rejected this assertion and found that it was made in bad faith.  Undeterred, the government maintains as it did below that by agreeing to the sting, Hao consented not only to Powell's solicitations, but also to his sexual battery (a tort which the government recognizes is not before us).  Going to a place knowing wrongdoing may occur is not consent to it; nor is agreeing to help collect evidence of it should it occur.  The government cites no remotely similar case supporting its position and its argument has little logical force.  The district court's finding is correct.

**3.** The district court awarded Hao damages in part because Powell caused five of the seven years of delay in the processing of her meritorious asylum application.  The government's independent intervening cause argument is foreclosed by *Bank of New York v. Fremont General Corp.,* in which we concluded that "the notion of independent intervening cause has no place in [California's] law of intentional torts."  523 F.3d 902, 910 (9th Cir. 2008) (internal quotation mark omitted).  Although the government rightly points to some tension in California law on this question, we find no controlling intervening precedents and thus are

bound by *Bank of New York.  See F.D.I.C. v. McSweeney*, 976 F.2d 532, 535 (9th

Cir. 1992).[1]

**4.** Another part of the seven year delay, the final two years between Hao

receiving a fair asylum interview and being granted asylum, was not caused by

Powell's torts.  Hao may have suffered such a delay if she had been assigned a fair

asylum officer in the first place, albeit the delay would have occurred at an earlier

time.  The district court's finding to the contrary is not supported in the record and

was clearly erroneous.  2013 WL 4007770 at ¶ 68.  Nevertheless, we conclude that

no damages were independently attributable to these last two years.  Hao's injuries

are not limited the delay itself, which could be properly limited to five years, but

also include the emotional stress that extended through the entire course of the

nearly eight year period she spent waiting for the resolution of her case. Powell's

tortious abuse of his position was a substantial factor that proximately caused these

---

[1]Even if the intervening cause doctrine were applicable to intentional torts in some circumstances, such circumstances would be rare, *see Brewer v. Teano*, 40 Cal. App. 4th 1024, 1036 (Ct. App. 1995), and the doctrine would not apply here. Thus, we would still conclude that Powell's torts proximately caused the five year delay.  Powell could have foreseen that his tortious conduct might lead to delays in Hao's asylum proceedings while the authorities sorted out what had happened. *See Pool v. City of Oakland*, 42 Cal. 3d 1051, 1063 (1986).  Moreover, the (then) INS' decision to delay turned on the tortiousness, *per se*, of Powell's conduct, setting it far apart from the cases the government cites.

Also, contrary to the government's arguments, the discretionary function exception is not relevant here.  Hao's claims are not based on the INS's failure to exercise due care: whether the INS was well justified, unwise, or negligent in deciding to wait is not important.

prolonged emotional injuries. *See id.* at ¶ 73. The damages the district court awarded are thus still appropriate under California law. *See Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1214 (Cal. 1997). As a result, the error did not affect substantial rights and is harmless. *See* Fed. R. Civ. P. 61.

**5.** We affirm the district court's decision not to apply collateral estoppel to whether Lu was pregnant in late 1999. The immigration judge in Lu's asylum case found that she was not pregnant in the U.S. in 1999. However, the issue of Lu's pregnancy was not "necessary to support the judgment[]" in the asylum proceeding. *See Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999). In fact, it is unclear whether the BIA decided the question of the 1999 pregnancy on appeal. The BIA relied on the "constellation of problems" in different parts of the testimony provided by Lu and her former husband—no one of which would necessarily have been sufficient by itself—to conclude that the couple had not met their burden for asylum. This ambiguity in the BIA's opinion prevents the government from meeting its burden to show "with clarity and certainty what was determined by the prior judgment." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

**6.** The district court awarded fees under the Equal Access to Justice Act because it found that the government had acted and litigated in bad faith. 28

5

U.S.C. § 2412(b). The threshold for bad faith is high; it requires more than quotidian sharp-elbowed litigation. *Brown v. Sullivan*, 916 F. 2d 492, 495 (9th Cir. 1990). Despite this strict standard, district courts "have broad fact-finding powers in [the area of sanctions] to which appellate courts must accord great deference." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (en banc). We review for clear error and reversal is appropriate only if the finding is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal quotation marks and citation omitted).

The district court found four specific instances of bad faith, the earliest one on June 8, 2000. It then concluded that, under the totality of the circumstances, these episodes revealed a pattern of bad faith affecting all aspects of the litigation starting after June 8, 2000. Because we reverse one of the specific bad faith findings, we face a situation identical to that in *Rodriguez v. United States*, 542 F.3d 704, 713 (9th Cir. 2008). As in that case, we vacate and remand so that the district court "may consider what, if any, modification of the fee award is appropriate in light of this opinion." *Id*.

**A.** An attorney acts in bad faith if he knowingly or recklessly brings a frivolous argument. *See In re Keegan Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir. 1996). The district court correctly identified this standard before finding that the

6

government's oft repeated argument that Hao had consented to Powell's tortious conduct constituted bad faith. The district court concluded that the argument, to the extent that it included consent to battery, was "meritless and offensive." We agree. While the government's consent argument does not compel a finding of bad faith, such a finding was not illogical, implausible, or without support in the record. It was not clear error.

**B.** The district court found that the government argued in bad faith that the intentional tort exception barred Plaintiffs' claims in spite of our first opinion. Even under clear error, we must reverse this finding. Whenever the government presented an intentional tort exception-based theory, it provided a non-frivolous way to reconcile the argument with our previous decision. Moreover, it was proper for the government to use the intentional tort exception to counter Plaintiffs' claim that they could recover for the totality of Powell's conduct because his battery had been part and parcel of a "viable" tort. Bad faith has a high threshold and the district court's finding of it here is without support in the record.

**C.** A court may consider the government's prelitigation actions in assessing bad faith. *See Rodriguez*, 542 F.3d at 712. The district court found that the OIG agent running the sting had told Hao that he would be watching the live video from the apartment next door and promised to protect her if Powell touched her. 2013

7

WL 4007770 at ¶ 33. The agent, however, did not intervene when Powell

forcefully spanked her. The district court found the agent's failure to keep his

promise was in bad faith. Although we might well have come to a different

conclusion on de novo review, the agent's actions could reasonably be seen as

showing a blatant disregard for Hao's well-being. We cannot say that this finding

of bad faith is clearly erroneous.

**D.** The district court found that the government's failure to process Hao's

asylum claim until after Powell's criminal trial ended, despite having clear proof of

his corruption, showed bad faith. This choice to wait unnecessarily extended

Hao's separation from her husband and young son by five extra years. The

government has not even hypothesized a legitimate reason for the delay.[2] The

district court did not clearly err in finding bad faith.

Again, because we reverse one of the specific findings of bad faith, we

follow *Rodriguez* and vacate and remand the fee award to allow the district court to

---

[2]The government notes that the case at bar was stayed pending Powell's criminal trial. That is entirely different. The current litigation is about Powell's conduct and the issues arising in this case and in the criminal trial overlap significantly. Hao's asylum hearing by contrast had little or no shared substance with the criminal trial. The district court's finding, however, that the last two years of delay are also attributable to bad faith was clear error. As discussed above, this delay occurred in the ordinary course of processing Hao's claim once it resumed in 2005.

decide what, if any, changes should be made to the award of fees incurred after June 8, 2000.[3] *See Rodriguez*, 542 F.3d at 713.

**7.** In conclusion, the award of damages is AFFIRMED.  We VACATE and REMAND the fee award for reconsideration of the amount.  Costs are awarded to Appellees.

**AFFIRMED IN PART, VACATED IN PART.**

---

[3]The $4,113 of fees awarded for work prior to June 8, 2000 must also be vacated.  The district court awarded these fees pursuant to 28 U.S.C. § 2412(d)(2)(A), which does not apply to tort actions.  *See* 28 U.S.C. § 2412(d)(1)(A).