**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

XUE LU; JIE HAO,
    *Plaintiffs-Appellees/*
    *Cross-Appellants,*

v.

UNITED STATES OF AMERICA,
    *Defendant-Appellant/*
    *Cross-Appellee.*

Nos. 17-55040
17-55087

D.C. No.
2:01-cv-01758-
CBM-EX

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted October 9, 2018
Pasadena, California

Filed April 17, 2019

Before: Sandra S. Ikuta and John B. Owens, Circuit
Judges, and Haywood S. Gilliam, Jr.,[*] District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Haywood S. Gilliam, Jr., United States District
Judge for the Northern District of California, sitting by designation.

## SUMMARY[**]

**Equal Access to Justice Act / Attorneys' Fees**

The panel vacated the district court's award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), and remanded.

The panel held that because the district court did not have the benefit of *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), when it issued an award of attorneys' fees, it failed to apply the appropriate legal framework. The panel further held that it could not determine whether the court's error was harmless, and the panel vacated the award and remanded to allow the district court to reconsider its fee award under the *Goodyear* standard. On remand, *Goodyear*'s causation standard requires the district court to identify those expenses that the plaintiffs would not have incurred but for the specific conduct that abused the judicial process, or to determine that the government's conduct so permeated all or a portion of the suit that "all fees in the litigation, or a phase of it, meet the applicable test: They would not have been incurred except for the misconduct." 137 S. Ct. at 1188.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Karen Schoen (argued) and Charles W. Scarborough, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Defendant-Appellant/Cross-Appellee.

V. James DeSimone (argued), V. James DeSimone Law, Marina del Ray, California; Douglas Grant Ingraham, Law Offices of Douglas G. Ingraham, Santa Monica, California; Colleen M. Mullen and Michael D. Seplow, Schonbrun Seplow Harris & Hoffman LLP, Los Angeles, California; for Plaintiffs-Appellees/Cross-Appellants.

**OPINION**

IKUTA, Circuit Judge:

The Equal Access to Justice Act, 28 U.S.C. § 2412(b), waives the government's sovereign immunity for the imposition of attorneys' fees "to the same extent that any other party would be liable under the common law." The district court exercised its common law authority to award attorneys' fees to the plaintiffs under this section. But because the district court did not have the benefit of *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), when it issued the award, it failed to apply the appropriate legal framework. Because we cannot determine whether the court's error was harmless, we vacate the award and remand to allow the district court to reconsider its fee award under the *Goodyear* standard. On remand, *Goodyear*'s causation standard requires the district court to identify those expenses that the plaintiffs would not have incurred but for

the specific conduct that abused the judicial process, or to determine that the government's misconduct so permeated all or a portion of the suit that "all fees in the litigation, or a phase of it, meet the applicable test: They would not have been incurred except for the misconduct." 137 S. Ct. at 1188.

I

We begin with a brief description of the relevant facts and procedural history of this case, which has spanned over fourteen years and three appeals.

A

Xue Lu, a Chinese national, arrived in the United States in 1997 and applied for political asylum. Her asylum application was assigned to asylum officer Thomas Powell, who interviewed her with her immigration attorney on February 15, 2000. Powell later arranged an appointment with Lu to meet her alone at her apartment. At this meeting, Powell fondled Lu and told her that he would approve her application only if she accepted his sexual demands. Lu rejected Powell's advances, and shortly after learned that her asylum application had been denied.[1]

Jie Hao, also a Chinese national, arrived in the United States in 1999 and likewise applied for asylum. Powell interviewed her with her attorney on May 22, 2000, and a few days later attempted to arrange a meeting alone with Hao in her home. Hao's attorney, who had also represented Lu, contacted the Department of Justice (DOJ) to report Powell's conduct. Hao met with a DOJ agent, and agreed to cooperate

---

[1] Lu returned to China in 2009.

with the government, including by allowing the government to record her meeting with Powell. The agent told Hao to signal him during the meeting if Powell engaged in improper conduct or attempted to touch her, and the agent would protect her.

At the meeting on June 4, 2000, Powell told Hao that he would approve her asylum application for $2,000. At some point in the meeting, he also slapped Hao's buttocks multiple times and kissed her on the cheek. The DOJ agent did not intervene during the meeting. At a follow up meeting on June 8, Hao gave $2,000 (which she had previously received from DOJ agents) to Powell. Powell took the money, touched Hao on the knee, asked for a hug, and again kissed Hao on the cheek.

As a result of this sting operation, the United States indicted Powell for violating Lu's civil rights under color of law, in violation of 18 U.S.C. § 242, and for seeking bribes from both Lu and Hao in violation of 18 U.S.C. § 201(B)(2)(A). *See Xue Lu v. Powell*, 621 F.3d 944, 946 (9th Cir. 2010). In 2004, Powell was convicted of both charges. *Id.*

## B

While the criminal case against Powell was pending, Lu and Hao filed a civil action under the Federal Tort Claims Act (FTCA) against Powell, his supervisor, various unknown agents, and the United States in connection with Powell's conduct. Their complaint alleged: (1) deprivation of constitutional rights, (2) negligence, (3) sexual battery, (4) assault and battery, (5) intentional infliction of emotional distress, (6) cruel and inhumane and degrading treatment,

(7) interference with the right to seek asylum, and (8) gender discrimination, harassment, and violence against women.  In 2005, after Powell's conviction and sentencing, the court granted the government's motion to dismiss the action against the United States for failure to state a claim, on the ground that Powell was acting outside the scope of his employment when he perpetrated the sexual assaults on the plaintiffs, and therefore the United States could not be held liable on a respondeat superior theory.[2]

On appeal, we reversed in part and remanded two claims for trial.  *Xue Lu*, 621 F.3d 944, 951.  Contrary to the district court's determination, we held that Powell acted within the scope of his employment because his conduct was "incidental to the asylum system."  *Id.* at 949.  Next, we held that although the United States is "immune from liability for an assault or battery by its employee," *see* 28 U.S.C. § 2680(h), Lu and Hao could bring claims for "infliction of emotional distress," because "[t]he emotional distress suffered as a result of the demand for sexual favors is an injury distinct from the battery," *Xue Lu*, 621 F.3d at 950.  We also held that Powell had attempted to interfere with Lu and Hao's statutory right to asylum, and therefore they could bring claims for interference with their civil rights under section 52.1 of the California Civil Code.[3]  *Id.*

---

[2] Hao and Lu's claims against the individual defendants were dismissed through a combination of settlement and stipulation after an additional three years of litigation.

[3] Section 52.1(c) of the California Civil Code provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with [in a specified manner] may institute and prosecute

On remand, Lu and Hao's claims for violation of section 52.1 and intentional infliction of emotional distress proceeded to a bench trial. In an August 5, 2013 order, the district court ruled in favor of the plaintiffs on both claims, reasoning that Powell interfered with the plaintiffs' right to asylum or their due process right to a meaningful hearing for asylum relief, and that Powell's offensive touching constituted intentional infliction of emotional distress. The district court awarded $500,000 in damages to Lu and $700,000 in damages to Hao.

After the verdict, the plaintiffs moved for attorneys' fees. The district court determined it could award "attorney fees at market rates in cases involving bad faith by the United States" if it "finds that the fees incurred during various phases of litigation are in some way traceable to the [defendant's] bad faith." *Xue Lu v. United States*, No. 2:01-cv-1758, 2014 WL 2468826, at *1 (C.D. Cal. May 23, 2014) (quoting *Brown v. Sullivan*, 916 F.2d 492, 495, 497 (9th Cir. 1990)). Based on this standard, the court found that the government's conduct resulted in two incidents of pre-litigation bad faith conduct and two incidents of bad faith conduct during the litigation.

First, the court held the DOJ agent's "failure to come to [Hao's] aid after Powell touched Plaintiff['s] buttocks" constituted bad faith pre-litigation conduct. *Id.* at *3.

Second, the court found that the government had engaged in pre-litigation bad faith conduct by delaying consideration

in his or her own name and on his or her own behalf a civil action for damages . . . ."

of Hao's asylum application for seven years, until the criminal case against Powell was resolved.[4]  *Id.*

Third, the court found the government had engaged in bad faith conduct by arguing during the litigation that Hao could not claim she suffered an injury from Powell's touching because Hao gave "express, voluntary written consent" to participate in the sting operation, and had assumed the potential risks associated with the operation.  *Id.*  The court found that Hao had consented only to assisting in the sting, not to being a victim of offensive touching, and therefore this argument was in bad faith.  *Id.* at *4.

Finally, the district court held that the government had engaged in bad faith conduct by arguing that Hao and Lu's claims were barred by the intentional tort exception under the FTCA[5] even though we had previously held on appeal that Lu and Hao could bring claims for intentional infliction of emotional distress.  *Id.*

The district court did not, however, agree that all of the conduct identified by Lu and Hao before or during the litigation constituted bad faith.  For instance, the government's reliance on an immigration judge's findings did not constitute bad faith.  Nor did the government engage in bad faith conduct by making a reference to Lu and Hao's claims as "mere allegations" during the proceedings.  *Id.* at *4 n.1.

---

[4] Hao's asylum application was granted in 2007.

[5] The FTCA excludes any claim "arising out of" eleven categories of torts, including assault or battery, but not including intentional infliction of emotional distress.  28 U.S.C. § 2680(h).

The district court concluded that "[u]nder the totality of the circumstances" the government's bad faith "has affected all portions or phases of the litigation since June 8, 2000," the date of the sting operation. *Id.* at *4. The district court therefore held that the plaintiffs were entitled to some $877,563 in fees under 28 U.S.C. § 2412(b). It also awarded $4,112 in fees under 28 U.S.C. § 2412(d), which provides for the award of fees to a prevailing party under specified circumstances,[6] for fees incurred prior to the sting operation. *See id.* at *5. In total, the district court awarded $881,675 in fees. *Id.* at *8.

## C

On appeal, we affirmed the district court's judgment in an unpublished decision, but vacated the fee award. *See Xue Lu v. United States*, 638 F. App'x 614 (9th Cir. 2016). In considering the district court's ruling on attorneys' fees, we upheld three of the district court's bad faith findings. First, we held that the district court had not clearly erred in holding that the government engaged in bad faith conduct when the DOJ agent failed to come to Hao's aid, although "we might

---

[6] 28 U.S.C. § 2412(d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

well have come to a different conclusion on de novo review." *Id.* at 618–19. Nor did the district court clearly err in finding the government's delay in considering Hao's asylum application was bad faith conduct, at least for the first five years. *Id.* at 619 n.2. We held that the final two years of delay (from 2005 to 2007), which "occurred in the ordinary course of processing" Hao's asylum application, did not rise to the level of bad faith. *Id.* at 619 n.2. Likewise, the district court did not clearly err in holding the government engaged in bad faith by arguing that Hao had consented or assumed the risk of Powell's sexual touching, although we noted that a finding of bad faith was not compelled. *Id.* at 618.

We reversed, however, the district court's fourth finding "that the government argued in bad faith that the intentional tort exception barred Plaintiffs' claims in spite of our first opinion." *Id.* We noted that "[w]henever the government presented an intentional tort exception-based theory, it provided a non-frivolous way to reconcile the argument with our previous decision." *Id.* We concluded that "[b]ad faith has a high threshold and the district court's finding of it here is without support in the record." *Id.* We therefore vacated the fee award and remanded "to allow the district court to decide what, if any, changes should be made to the award of fees incurred after June 8, 2000." *Id.* at 619.[7]

## D

On remand, the district court again articulated its understanding that it "may award attorney fees at market rates

---

[7] We also vacated the district court's fee award to the extent it relied on 28 U.S.C. § 2412(d)(2)(A), because that section does not apply to tort actions like this one. *Id.*

for the entire course of litigation, including time spent preparing, defending, and appealing . . . awards of attorneys' fees, if it finds that the fees incurred during various phases of litigation are *in some way traceable* to the [defendant's] bad faith." *Xue Lu v. United States*, No. 2:01-cv-1758, 2016 WL 11087106, at *2 (C.D. Cal. Nov. 10, 2016) (quoting *Brown*, 916 F.2d at 495, 497) (alterations and emphasis in district court order). Because we had rejected the conclusion that the government's intentional tort argument constituted bad faith conduct, the court set out to calculate which fees were "traceable to the three findings of bad faith affirmed by the Ninth Circuit," namely the DOJ agent's failure to come to Hao's aid, the government's delay in considering Hao's asylum application, and the government's argument that Hao had consented or assumed the risk of Powell's sexual touching. *Id.*

To trace these fees, the district court relied on a declaration submitted by plaintiffs' counsel, which provided two alternatives for calculating attorneys' fees. *Id.* First, counsel argued that "all work performed in this case is traceable to Powell's bad faith" and so all fees should be awarded. As an alternative, however, counsel traced the hours incurred by each attorney or staff member to one or more of the district court's three surviving findings of bad faith. The plaintiffs took a broad view of traceability. For instance, the declaration claimed that two incidents of bad faith conduct—the DOJ agent's failure to assist Hao after Powell touched her, and the government's delay in consideration of Hao's asylum application—"existed from the inception of the litigation so the majority of Plaintiffs' counsels' work was in some way traceable to that bad faith conduct." Further, the declaration claimed that the government's argument about the FTCA's exception for

intentional torts related to Powell's offensive touching, and therefore work addressing the intentional tort argument was also traceable to bad faith. Finally, the declaration claimed that because work for both Hao and Lu substantially overlapped, only work performed solely for Lu was not recoverable. Based on this analysis, the declaration concluded that the work traceable to bad faith amounted to $676,751 in fees, *see id.*, some $200,000 less than the amount the district court had previously awarded for the entire litigation.

Without undertaking any independent analysis, the district court adopted the declaration, and concluded that "[t]he evidence submitted by Plaintiffs demonstrates $676,751 in fees expended in the underlying action is traceable to one or more of the three findings of bad faith by the Government," and awarded the entire amount to plaintiffs. *Id.* at *2, *4.

Plaintiffs also moved for attorneys' fees incurred on the appeal of the previous fee award and post-remand. Although this fee motion was not timely under Ninth Circuit Rule 39-1.6, the district court held that the untimely filing was a result of excusable neglect under *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc). The district court granted the motion in full, holding that "[t]he evidence submitted by plaintiffs demonstrates $314,651 in fees expended on the second appeal and post-remand is traceable to one or more of the three findings of bad faith by the Government." *Xue Lu*, 2016 WL 1108716, at *4. In total, the court awarded $993,758 in attorneys' fees. The government appealed.

II

After the district court ruled, the Supreme Court issued its opinion in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017). *Goodyear* shed a new light on the framework for awarding attorneys' fees as sanctions, which is equally applicable to an award of fees under § 2412(b). Therefore, we begin by explaining this framework in light of *Goodyear*.

A

In *Goodyear*, three plaintiffs claimed that the failure of a Goodyear tire caused their motorhome to drive off the road and flip over. 137 S. Ct. at 1184. During discovery, the plaintiffs repeatedly asked Goodyear to provide internal test results for the tire, but Goodyear delayed its responses or refused to turn over requested documents. *Id.* The plaintiffs finally settled with Goodyear before trial. Months after the settlement, the plaintiffs learned that Goodyear had withheld a crucial set of test results for the tires. *Id.* The plaintiffs then moved the district court for an award of attorneys' fees and costs as sanctions for discovery fraud. *Id.* The district court found that Goodyear "had engaged in a 'years-long course' of bad-faith behavior," making "repeated and deliberate attempts to frustrate the resolution of this case on the merits." *Id.* The court therefore ordered Goodyear to reimburse the plaintiffs for attorneys' fees and costs paid during the suit, reasoning that due to Goodyear's egregious behavior, "all of the attorneys' fees incurred in the case [can] be awarded without any need to find a causal link between [those expenses and] the sanctionable conduct." *Id.* at 1185 (internal quotation marks omitted). We upheld this award on appeal. *Id.* The Supreme Court reversed, holding that the

award was inconsistent with the proper framework for imposing such sanctions.

## B

In explaining the proper framework, *Goodyear* began with first principles: that "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* at 1186 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). Indeed, the Supreme Court has long made clear that "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 6 Wheat 204, 227 (1821)). Among the inherent powers recognized by the Supreme Court is the power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear*, 137 S. Ct. at 1186 (quoting *Chambers*, 501 U.S. at 44–45). Such a sanction may include the assessment of attorneys' fees against "a party that has acted in bad faith." *Id.*; *see also Chambers*, 501 U.S. at 45–46 ("[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'").[8]

*Goodyear* emphasized that a bad faith fee award, "when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." 137 S. Ct. at 1186 (citing

---

[8] Such fee awards are an exception to "the so-called 'American Rule,'" which "prohibits fee shifting in most cases." *Chambers*, 501 U.S. at 45.

*Mine Workers v. Bagwell*, 512 U.S. 821, 826–30 (1994)). "In other words, the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (quoting *Bagwell*, 512 U.S. at 829). If a fee award goes beyond a compensatory purpose, "a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *Id.*; *see also Miller v. City of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011) (noting that "non-compensatory sanctions" may be "akin to criminal contempt and may be imposed only by following the procedures applicable to criminal cases, including appointment of an independent prosecutor, proof beyond a reasonable doubt and a jury trial").

Because the imposition of attorneys' fees against a party who abused the judicial process is limited to compensation for the wronged party, "the court can shift only those attorney's fees incurred because of the misconduct at issue." *Goodyear*, 137 S. Ct. at 1186. "[A] sanction counts as compensatory only if it is calibrated to the damages caused by the bad faith acts on which it is based." *Id.* (cleaned up). Therefore, the court must "establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Id.*; *see also Miller*, 661 F.3d at 1029. *Goodyear* rejected our determination that "the trial court could grant all attorney's fees incurred during the time when [Goodyear was] acting in bad faith." *Id.* at 1189 (emphasis and internal quotation marks omitted). According to the Court, "that is a temporal limitation, not a causal one," and therefore "it is wide of the mark." *Id.* Instead, "[a] sanctioning court must determine which fees were incurred because of, and solely

because of, the misconduct at issue (however serious, or concurrent with a lawyer's work, it might have been)." *Id.*

*Goodyear* framed this causal link "as a but-for test": a party "may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). If an expense would have been incurred even absent any bad faith conduct, it cannot be part of a bad faith fee award. *Id.* A court may not shift fees if "the same work would have been done (for example, the same deposition taken) to contest the *non*-frivolous claims in the suit." *Id.* In other words, a district court making a bad faith fee award must determine "whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct." *Id.* Thus, a court must generally engage in "the grind of segregating individual expense items (a deposition here, a motion there)" or "categories of such items (again, like expert discovery)" in order to determine which fees "would not have been incurred except for the misconduct." *Id.* at 1188.

In certain exceptional cases, the but-for test allows a court to "shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at 1187. According to the Court, *Chambers* offered "one illustration" of this situation where "literally everything the defendant did—'his entire course of conduct throughout,' and indeed preceding, the litigation—was 'part of a sordid scheme' to defeat a valid claim." *Id*. at 1187–88 (quoting *Chambers*,

501 U.S. at 51, 57).**⁹**  Under these circumstances, "the district court could reasonably conclude that all legal expenses in the suit 'were caused . . . solely by [his] fraudulent and brazenly unethical efforts.'"  *Id.* at 1188 (quoting *Chambers*, 501 U.S. at 58).  Similarly, "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award."  *Id.*  This "exceptional case" rule is consistent with our prior cases holding that where the entirety of the action is attributable to bad faith abuse of the judicial process, a district court can award fees "for the entire course of litigation," so long as all fees are "in some way traceable to" bad faith activity.  *Brown*, 916 F.2d at 497.

In short, *Goodyear* clarified that when awarding attorneys' fees as a sanction for bad faith conduct, a district court must identify the conduct that abused the judicial process and, applying *Goodyear*'s but-for standard, identify only those expenses that the wronged party would not have

---

**⁹** In *Chambers*, the director of a television station had entered into a contract to sell the station's facilities and license to NASCO, and then changed his mind.  501 U.S. at 35–36.  When NASCO filed a lawsuit, the director embarked on a scheme to prevent NASCO from using the court to enforce the contract.  *Id.* at 36–37.  In his initial conference with the district court, the director deliberately concealed the fact that he was taking steps to transfer the station to a third party for the purpose of evading the court's reach.  *Id.* at 37–38.  The director "continued to abuse the judicial process"; he refused to provide essential discovery materials, made "a series of meritless motions and pleadings and delaying actions," and secretly sought permission from the applicable regulatory agency to relocate the station's operations.  *Id.* at 38–39 (internal quotation marks omitted).  The district court found that the defendant deliberately misused the judicial process "to defeat NASCO's claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources."  *Id.* at 57.

incurred but for the misconduct. *See* 137 S. Ct. at 1187. Because the fee award must be compensatory, rather than punitive, the award "may go no further than to redress the wronged party for losses sustained." *Id.* at 1186 (internal quotation marks omitted). In an exceptional case such as *Chambers*, where fees associated with the entirety of an action, or an entire portion of the action, would not have been incurred but for the bad faith conduct of a litigant, the district court may shift "all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at 1187.

## C

*Goodyear*'s framework is applicable in our case. In *Goodyear*, the Court reaffirmed that courts have inherent, common law authority to assess attorneys' fees as a sanction for bad faith conduct. A court would be precluded from assessing attorneys' fees against the United States unless it waived its sovereign immunity. Accordingly, the EAJA provided such a waiver for attorneys' fees awards in civil cases in which the United States is a party.[10] Under the

---

[10] The relevant section provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

EAJA, "[u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(b). In such cases, "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable *under the common law* or under the terms of any statute which specifically provides for such an award." *Id.* (emphasis added).

We have interpreted the statute's reference to the common law as including the common law authority of courts to assess attorneys' fees pursuant to their inherent powers. *See Barry v. Bowen*, 825 F.2d 1324, 1334 (9th Cir. 1987), *overruled on other grounds as recognized in Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1462 (9th Cir. 1992). Said otherwise, "[s]ection 2412(b) codified the bad faith exception to the 'American rule' against the award of attorney's fees and made that exception applicable in suits against the United States." *Id.* Because the ability of a court to award attorneys' fees against the government for bad faith conduct is the same as the court's inherent power to do so against other litigants, absent another statute that confers additional powers, any analysis of the bad faith exception under the EAJA "draws upon the well of cases decided in other contexts." *Id.*[11]

---

28 U.S.C. § 2412(b).

[11] The inquiry under 28 U.S.C. § 2412(b) differs from that undertaken by courts deciding whether to award fees under 28 U.S.C. § 2412(d)(1)(A), which allows a court to shift all fees and expenses incurred by a prevailing party (other than the United States) in an action brought by or against the United States, unless the court determines that the position of the United States in the litigation was "substantially justified." 28 U.S.C. § 2412(d)(1)(A); *see also INS v. Jean*, 496 U.S. 154,

III

We now consider what *Goodyear* means for this case. As in *Goodyear* itself, we must consider whether the district court's ruling complied with the *Goodyear* framework, or otherwise passes a but-for test. We review the district court's fee award for abuse of discretion. *See Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008). And "in light of the trial court's superior understanding of the litigation," its judgment is "entitled to substantial deference on appeal." *Goodyear*, 137 S. Ct. at 1187 (internal quotation marks omitted).

Because the district court did not have the benefit of *Goodyear* when it issued its ruling, it is not surprising that the court's fee award does not comply with *Goodyear*'s framework. There are several inconsistencies. First, the district court did not expressly apply *Goodyear*'s but-for standard or undertake the granular inquiry indicated by that opinion, i.e., segregating individual expense items or categories of such items and establishing that they would not have been incurred except for the government's misconduct. Rather, the court relied on the plaintiffs' declaration, which provided only broad generalizations about causation, and did not calibrate a close "causal link," *id.* at 1186, between the sanctionable conduct and specific legal tasks. Further, in indicating that the majority of plaintiffs' fees were recoverable merely because the government's bad faith

_____

158–60 (1990). A court's determination whether the government's position was substantially justified is made for a particular action as a whole. *See Jean*, 496 U.S. at 161–62. Section 2412(d)(1)(A) is not applicable here because the plaintiffs' claims "sound[] in tort." 28 U.S.C. § 2412(d)(1)(A).

conduct "existed from the inception of the litigation," the declaration appeared to adopt the temporal approach rejected in *Goodyear.* Moreover, the declaration encompassed fees for work done for both Hao and Lu, contrary to *Goodyear*'s clarification that it is inappropriate to grant fees "for all legal work relating to" specified claims "regardless of whether the same work would have been done (for example, the same depositions taken) to contest the non-frivolous claims in the suit." *Id.* at 1187.

Although the district court failed to provide the close analysis generally required by *Goodyear*, we must still consider whether this is one of the "exceptional cases" identified in *Goodyear* where the "grind" of tracing each legal fee to a specific bad faith act is not required. *Id.* at 1187–88. The court did not make any finding to that effect, but certain of the district court's statements suggest that it deemed the case to be one where the government's misconduct was such that it was appropriate to shift all or a portion of the plaintiffs' fees "in one fell swoop." *Id.* at 1187. First, in stating that under the "totality of the circumstances" the government's bad faith "has affected all portions or phases of the litigation since June 8, 2000," the date of the sting operation, the district court suggested that the government's bad faith conduct "so permeated the suit as to make that misconduct a but-for cause of every subsequent legal expense," *id.* at 1189. Second, the district court held it could award attorneys fees "if it finds that the fees incurred during various phases of litigation are *in some way traceable* to the [defendant's] bad faith," *Xue Lu*, 2016 WL 11087106, at *2 (quoting *Brown*, 916 F.2d at 497) (alteration and emphasis in district court order), a standard that may be applicable in exceptional cases, *see Brown*, 916 F.2d at 497. Finally, the district court's bad faith findings included the

government's prelitigation conduct (i.e., the failure to come to Hao's aid during the sting and five of the seven years of delay in processing Hao's asylum application), which *Goodyear* indicated is a consideration in exceptional cases, *see* 137 S. Ct. at 1187–88 (stating it had approved the award in *Chambers* because "literally everything the defendant did—'his entire course of conduct' throughout, and indeed preceding, the litigation—was 'part of a sordid scheme'").

On the other hand, there are several indications that this case is not such an exceptional case. Our prior opinion makes clear that not all of the government's activity is part of a "sordid scheme." We concluded that the government's argument that the FTCA's intentional torts exception barred plaintiffs' claims did not constitute bad faith, and that the district court's contrary finding was "without support in the record." *Xue Lu*, 638 F. App'x at 618. We also held that the final two years of delay in processing Hao's asylum application "occurred in the ordinary course" and did not rise to the level of bad faith. *Id.* at 619 n.2. Nothing in the record suggests that the government engaged in needless delay of the litigation, attempted to harass the plaintiffs with unwarranted depositions or discovery, defied the letter or spirit of a court order, or otherwise attempted to hamper the judicial process. *Cf. Chambers*, 501 U.S. at 37–42. Moreover, the district court itself chose to ignore the declaration's assertion that all work performed in the case was traceable to the government's bad faith, and ultimately declined to award some $200,000 in attorneys' fees. Such a ruling would be inconsistent with a conclusion that the government's misconduct "so infected the lawsuit as to account for each and every expense the [plaintiffs] subsequently incurred." *Goodyear*, 137 S. Ct. at 1188.

We therefore conclude that, as in *Goodyear*, there is too much uncertainty regarding the record and the district court's reasoning to determine whether the district court's fee award is consistent with the *Goodyear* standard. Our uncertainty "points toward demanding a do-over, under the unequivocally right legal rules." *Id.* at 1190.

We reach the same conclusion with respect to the government's challenge to the district court's award of fees incurred by plaintiffs during the previous appeal of the initial fee award and after remand. In general, the Supreme Court has rejected the argument that costs incurred appealing the award of a sanction or defending against such an appeal are incurred "because of" the sanctioned party's bad faith conduct in the trial court. *See Lockary v. Kayfetz*, 974 F.2d 1166, 1177–78 (9th Cir. 1992) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406 (1990)). As explained in the context of Rule 11 sanctions, the expenses incurred in defending a sanctions award on appeal "are directly caused by the district court's sanction and the appeal of that sanction, not by the plaintiff's" bad faith conduct in the district court. *Cooter & Gell*, 496 U.S. at 407. Thus, if the appeal itself is not frivolous, then a fee award is generally not appropriate. *See id.* This conclusion is consistent with the *Goodyear* standard, which requires a direct, but-for relationship between the bad faith conduct and the fees. Nevertheless, there may be exceptional cases where bringing or defending an appeal is part of a single "sordid scheme" and is likewise compensable. The district court may also reconsider this issue under the correct standard on remand.[12]

---

[12] The government argues that the district court abused its discretion in considering the untimely motion for appeal fees under the doctrine of excusable neglect because it did not give the government leave to file a

We conclude that it is most prudent to vacate the fee award and remand to the district court to determine, under the standard set out in *Goodyear* and this opinion. The district court must identify the abuse of judicial process that is sanctionable, and apply the but-for standard to determine which fees would not have been incurred but for that conduct. *See Goodyear*, 137 S. Ct. at 1187. If the district court determines that this is an exceptional case, it must explain why the entirety of the case, or some portion of the case, was initiated in "complete bad faith," so that the court may appropriately make a blanket award.[13]

**VACATED AND REMANDED.**[14]

---

sur-reply responding to plaintiffs' excusable neglect argument. We reject this argument, and affirm the district court's ruling, because the government cannot show that it was prejudiced; the evidence it sought to provide in its sur-reply was already before the district court, and the government had the opportunity to present its argument orally at a hearing. The government also argues that the plaintiffs erred by filing their request in district court, instead of in the Ninth Circuit. Because the government did not raise this argument to the district court, it is waived. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008).

[13] We reject the plaintiffs' argument on cross-appeal that the district court erred in declining to award attorneys' fees for Powell's conduct. A bad faith fee award is not a remedy for the conduct giving rise to the cause of action, *see Chambers*, 501 U.S. at 53, and therefore cannot be "based solely upon a finding of bad faith in the conduct underlying the lawsuit," *Rodriguez*, 976 F.2d at 712 (emphasis and internal quotation marks omitted). The district court may consider such prelitigation conduct, however, if raised as evidence that the government's conduct before the court was in bad faith or vexatious. *See id*.

[14] The parties shall bear their own costs on appeal.